PERCH *v.* NEW YORK CENTRAL RAILROAD CO.

ON REHEARING.

1. RAILROADS — AUTOMOBILES — CROSSING  ACCIDENT — PROXIMATE CAUSE—EVIDENCE—THIRD PARTIES.

> Under record in action under the death act by administratrix of estate of motorist killed in the nighttime at a railroad crossing at which gates had been lowered, showing that a third party, since convicted of negligent homicide, drove his car in such a negligent manner as to push decedent's car some 92 feet on to fifth set of tracks where it was run into by defendant's heavy passenger train then exceeding speed limit permitted by city ordinance, that although train operators perhaps could have seen car on the crossing and stopped train before reaching crossing had it been operated at the maximum lawful speed the engineer did not see the car and the fireman did not see it until just before the locomotive struck it, that the bell was ringing and that the whistle had been blown, train operators were, as a matter of law, not guilty of negligence since they had no reason to anticipate that an automobile would be on the crossing under such circumstances and were not otherwise under obligation to stop; the sole proximate cause of the accident being the fault of the motorist who pushed decedent's car to the tracks.

2. SAME—PROTECTION OF HIGHWAY CROSSINGS—DISCRETION OF PUBLIC SERVICE COMMISSION.

> The kind and character of the protection that is to be erected at railroad crossings is left to the sound judgment and discretion of the State public service commission and it is based upon the reasonableness of the protection to be afforded and may be in the form of warning signals, bells, or by the erection of crossing gates.

3. NEGLIGENCE—DEFINITION.

> Negligence is the failure to exercise that degree of care which the law imposes for the protection of the interests of those persons likely to be injuriously affected by the want of it.

Necessity of adequate causal relation, see 2 Restatement, Torts, § 430.

Basis upon and agencies by which negligence is found to be present, see 2 Restatement, Torts, § 285.

Sharpe, North, and McAllister, JJ., dissenting.

Appeal from Wayne; O'Neill (James E.), J., presiding. Submitted October 5, 1939. (Docket No. 56, Calendar No. 40,736.) Decided December 19, 1939. Submitted on rehearing April 2, 1940. Decided on rehearing June 4, 1940. Rehearing denied September 6, 1940.

Case by Laura Perch, administrator of the estate of George Perch, deceased, against New York Central Railroad Company for damages under the death act. Verdict and judgment for plaintiff. Defendant appeals. Reversed on rehearing.

*Cashan P. Head* and *Berger, Manason & Barris,* for plaintiff.

*William A. Alfs* (*John J. Danhof* and *Harold H. McLean,* of counsel), for defendant.

North, J. Plaintiff, as administratrix of the estate of George Perch, seeks to recover damages arising from a railroad crossing accident which caused the death of her husband, Mr. Perch. Shortly before 1 o'clock on the morning of May 13, 1937, plaintiff's decedent was driving a Dodge automobile north on Lonyo road in the city of Detroit. This road runs north and south and is intersected at right angles by six sets of tracks of the defendant railroad company. As plaintiff's decedent, proceeding in a northerly direction, approached defendant's tracks, the railroad crossing gates were down and one of defendant's westbound passenger trains was approaching. Mr. Perch stopped his car. As his car stood about 25 feet south of the crossing gates, another automobile driven in a negligent manner by one Roy Walton struck the Perch car in the rear with such force that it was knocked through the gates, across four sets of intervening tracks and

came to rest on the fifth set of tracks upon which the train was coming. It was approximately 92 feet from the point where the car of plaintiff's decedent was standing south of the gates to the point where it stopped on defendant's westbound main track. Upon trial by jury plaintiff had verdict and judgment was entered thereon. Defendant contends that the proximate cause of this accident was the negligent act of Roy Walton, in consequence of which he was tried and convicted of the crime of negligent homicide. On this appeal appellant claims its motion for a directed verdict and its later motion for judgment *non obstante veredicto* should have been granted on the ground that as a matter of law Walton's negligence was the proximate cause of the accident. The sole question is whether this contention on the part of appellant is correct.

These additional facts are pertinent. As the automobile which plaintiff's decedent was driving was standing south of the railroad gates, defendant's train was approaching approximately 800 feet from the crossing and at a rate of speed in excess of 45 miles per hour. For a distance of 315 feet east of the center line of Lonyo road defendant's track is straight, but beyond that point it veers to the northeast on a three-degree curve. Because of this curve the headlight of the locomotive approaching Lonyo road was shining south of the crossing and did not light the place where the automobile came to a stop on the track until the locomotive had passed around the curve and had reached a point directly east of the crossing. But the record discloses there were numerous other lights in the locality which rendered objects on the crossing visible at least to some extent. The engineer did not see the automobile prior to the impact. The fireman's view was obstructed by the boiler of the locomotive as it rounded the

curve and he did not see the automobile until practically the instant it was struck. It was at this time that the engineer made a heavy service application of the brakes; but the train continued to travel a distance of approximately 1,500 feet. The engineer testified that even with the aid of the headlight on the locomotive he could not see more than 500 feet ahead; and further when 700 or 800 feet east of the crossing he could not see the south side of the crossing where the Perch automobile was presumably then standing. The train weighed substantially 1,500 tons, and there is testimony that at a speed of 30 miles an hour it would go from 700 to 1,000 feet after an emergency application of the brakes before coming to a stop, and at 60 miles per hour it would go 2,500 to 3,000 feet before stopping.

As above noted, appellant asserts that under this record the court should have held as a matter of law the proximate cause of this unfortunate accident was the wrong-doing of Roy Walton; but on the other hand plaintiff contends that the proximate cause of the accident was the negligence of defendant's employees in failing to discover plaintiff's decedent in his place of danger in time to avoid the accident and also negligence in operating the train at a rate of speed in excess of that provided by the city ordinance, i. e., 30 miles an hour. In this connection plaintiff asserts the collision occurred so soon after the Perch automobile stopped on the track on which the train was approaching that her decedent did not have time or opportunity to get out of the automobile.

Appellant's contention that Walton's negligence was the sole proximate cause cannot be sustained. The trial court, after advising the jurors as to the legal significance of "proximate cause," instructed them as follows:

"You will observe in order to entitle her to recover plaintiff must establish by a preponderance of evidence: (1) That the defendant was negligent. (2) That such negligence was a proximate cause of the collision between the car which George L. Perch was occupying and the train."

Clearly there is abundant evidence of negligence both on the part of Walton and of defendant. On this record it cannot be said as a matter of law that the negligence of either was the *sole proximate* cause. Instead the jury may well have found that the negligence of each of these was. a proximate cause.

"There may be more than one proximate cause for the same injury, and the mere fact that some other cause co-operates with the negligence of the defendant to produce the injury for which suit is brought does not relieve him from liability. 2 Blashfield, Cyclopedia of Automobile Law, p. 1204." *Camp* v. *Wilson,* 258 Mich. 38.

See, also, *Fitzcharles* v. *Mayer,* 284 Mich. 122, 128 (3 N. C. C. A. [N. S.] 565).

"It is elementary that where injury results from the concurrent negligence of two or more, each proximately contributing to the result, recovery may be had against one or more." *Banzhof* v. *Roche,* 228 Mich. 36.

"The two contributing causes must be held to be concurring where, as in this case, * * * the concurrence of both was essential to produce the injury." *Welch* v. *Jackson & Battle Creek Traction Co.,* 154 Mich. 399, 408.

Defendant's alleged negligence, as the jury must have found, continued to the very instant of the impact and injury to plaintiff's decedent. There was

no other intervening independent cause. On this record it cannot be said as a matter of law that defendant was not guilty of the alleged negligence or that such negligence was not a proximate cause of the accident and injury to plaintiff's decedent.

Defendant in support of its position relies upon *Lineberry* v. *Railway Co.*, 187 N. C. 786 (123 S. E. 1); *Thompson* v. *Railroad Co.*, 195 N. C. 663 (143 S. E. 186); and *Johnson* v. *City of Omaha*, 108 Neb. 481 (188 N. W. 122). We think each of these cases is readily distinguishable from the instant case. In each of the cited cases a defendant was held not liable as a matter of law. This conclusion was reached because it conclusively appeared that the sole proximate cause of the injury was the wrongful act or negligence of a third party. In other words, in each case the injury would have been suffered wholly regardless of the negligence charged against the defendant which the court held, as a matter of law, was not liable. There is testimony in this record from which the jury might well have found that both the negligence of Walton and the negligence of defendant were proximate causes of the accident. Further, under the circumstances here presented, it quite conclusively appears this accident would not have happened except as the result of concurrent negligence on the part of both Walton and defendant.

The judgment entered in the circuit court is affirmed, with costs to appellee.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, and MCALLISTER, JJ., concurred.

## ON REHEARING.

WIEST, J. Upon rehearing I am of the opinion the judgment should be reversed without a new trial.

George Perch, at the time of his death, was driving his automobile north on Lonyo road at about 12:30 a.m., May 13, 1937. As he approached Lonyo road crossing a train was approaching from the east. The crossing gates were down for the train to pass. While waiting near the crossing gate an automobile driven by Roy Walton approached rapidly and struck Perch's car from behind and drove it through the crossing gate across four tracks of the Michigan Central Railroad Company, a total distance of approximately 92 feet, to a point where the accident occurred. Defendant was operating a passenger train going west consisting of 17 passenger cars together with an engine and tender, all being approximately 1,500 feet in length. There is much testimony as to the time it would take to stop defendant's train and of the time the train took in stopping. Mr. Balicki, who was riding in the automobile with Perch, testified that when the automobile stopped on the fifth track north of the crossing gate the train was 800 feet away. If the automobile stopped when the train was 800 feet away, he had time, on the basis of the train going 45 miles an hour, to leave Perch's car. In the more than 12 seconds which elapsed he did nothing. His testimony is weakened by the cross-examination that he could not tell whether the oncoming train was 1,000, 800, or 100 feet away at the time the automobile stopped.

The towerman says the train was approximately 400 feet away when Walton's car came down the street and struck Perch's car and that the Perch car was still in motion at the time it was hit by defendant's train. There was no application of the brakes by Perch on the automobile while it was crossing these railroad tracks. The automobile was coming from the south. The engineer on the train did not see the automobile but the fireman saw it just before

the locomotive struck it. Balicki testified that although he had 12 seconds, according to his testimony, after the automobile stopped, to leave it, that he had no time, that the train was on top of him, that he gripped the handles of the automobile but had no time to open the door. The accident occurred in the nighttime. There were floodlights lighting the hump east of the crossing which may have lighted to some extent the crossing. Defendant's train was rounding a curve as it approached the crossing. The locomotive headlights were so focused that at a distance of 400 feet from the headlights they had a width of 4 feet-8½ inches, the distance between the rails of. defendant's track. The automobile lights at the time the accident occurred were headed north. The locomotive headlights could not light up the track until it had rounded the curve, a distance of approximately 315 feet, so that the lights headed down the track. There is much testimony as to how long it took the train to stop after the accident. There was testimony that by the application of the emergency brakes the train could have been stopped in a distance of 700 to 1,000 feet after the application of the brakes. But the accident had already happened when the fireman, in response to the engineer's inquiry, said the train had hit an automobile.

There is an appreciable length of time which must elapse between the time the engineer knew he had struck the automobile and the application of the brakes, and while the admission is as to the use of emergency brakes, the engineer did not use the emergency brakes because of possible damage to the equipment, of derailing the train, on account of the flattening of the wheels in case of the application of the emergency brake and the possibility of throwing people from their berths on the train, but used a so-called service application of the brakes and brought

the train to a stop about half a train length beyond the crossing.

It is undisputed the engineer did not see the automobile in question. He had no reason to anticipate that an automobile would be on the crossing when the gates were down and he was under no obligation to stop but, on the other hand, had the right of way. In addition to the gates being down, he had whistled for the crossing, the bell was ringing, and the automobiles which stood at the crossing had their headlights on when the automobile in question was driven on the track in front of the oncoming train by an act of a drunken driver now serving time for negligent homicide arising out of the accident.

The accident was not a result of the engineer's failure to see the automobile and to stop the train. He could not have foreseen or anticipated that the accident would happen at this particular crossing. The State has acted for the protection of passengers at railroad crossings and has prescribed the erection of crossing gates for the care and protection of those passengers who might be injured by the want of some protection. The kind and character of the protection that is to be erected at railroad crossings is left to the sound judgment and discretion of the Michigan public service commission and it is based upon the reasonableness of the protection to be afforded and may be in the form of warning signals, bells, or by the erection of crossing gates.

Negligence is the failure to exercise that degree of care which the law imposes for the protection of the interests of those persons likely to be injuriously affected by the want of it, and there is no question but that the erection and maintenance of crossing gates are supposed to be for the protection of those persons likely to be affected by getting on to a railroad crossing. Under the facts, the engineer was not

guilty of any negligence. The accident was caused by the fault of a drunken driver who struck the automobile and pushed it in front of the locomotive. This was the proximate cause of the injury. The court should have directed a verdict for defendant.

Judgment reversed, with costs.

BUSHNELL, C. J., and POTTER, CHANDLER, and BUTZEL, JJ., concurred with WIEST, J.

NORTH, J. (*dissenting*). On rehearing we have considered defendant's contention that the court should hold as a matter of law that the negligent operation of its train at an unlawful rate of speed and without keeping a proper lookout as it approached the place of this crossing fatality was not a proximate cause of the accident. Our review again brings the conclusion that this issue was one of fact for the jury, not one of law for the court.

Admittedly the automobile which plaintiff's decedent was driving would not have been upon defendant's tracks as its train approached except for the fact that his automobile was negligently struck in the rear by another automobile with such force that decedent's car was driven forward and upon the railroad tracks. But obviously it is equally true that the accident would not have occurred at all if just at that time defendant's train had not been passing over this crossing; and the question narrows down to whether the court can say as a matter of law that the death of plaintiff's decedent would have resulted regardless of whether defendant in the operation of its train was guilty of the negligence charged. Plaintiff charged and offered testimony tending to establish defendant's negligence in two particulars. First, that the engineer as he approached the point of ac-

cident failed to keep a proper lookout, and second, that the train was being operated at an unlawful rate of speed.

As to the charge of a failure to keep a proper lookout, there is testimony that notwithstanding at some distance from the crossing in the direction from which the train was approaching there was a curve in the track so that prior to rounding the curve the locomotive headlight was not focused upon the crossing, still in the immediate vicinity of the crossing there were other lights which the jury may have found were sufficient to render the presence of the automobile on the tracks visible; and there is ample room for the fair inference that had the engineer been keeping a proper lookout he could have and should have observed the situation in time to have retarded the speed of his train very materially even though possibly he might not have been able to have brought it to a full stop before the point of collision. But this he failed to do, and instead his own testimony is that he did not see the automobile on the crossing at all. And this is true notwithstanding there is testimony that the automobile was in its perilous position at a time when the train was over 800 feet distant from the crossing. As will be later noted more in particular, the jury might well have found that had plaintiff's decedent had additional time, even to the extent of a second or two, he might have escaped from the automobile and his life been saved. Hence it must be held that the failure of defendant's engineer to keep a proper lookout which resulted in no effort being made to stop the train or lessen its speed may have been found by the jury to have been a proximate cause of the death of plaintiff's decedent. In this connection it may be noted that another passenger in the automobile testified that he attempted to get out of the car but did not have time

to do so, and that he also testified to facts and circumstances which clearly tend to indicate plaintiff's decedent was aware of his danger and likewise attempted to save himself.

On the question of whether there is testimony tending to show that a jury may have found as a proximate cause of this accident that this train was being operated at an unlawful rate of speed, the following facts are pertinent. There is testimony that the automobile was on the crossing when the train was 800 feet distant. The engineer testified that at the distance of 800 feet he had an ordinary night view. Thirty miles per hour was the maximum speed at which it was lawful for this train to travel. But there is testimony that after the train with brakes applied had passed some 6 or 8 blocks beyond the point of collision it was still going 45 miles per hour. If it be assumed that it was going at only 45 miles per hour when it passed the crossing, a computation discloses that it took substantially 12 seconds for the train to reach the automobile from a distance of 800 feet. But if the train had been proceeding at the lawful rate of 30 miles per hour the time within which it would have reached the point of collision would have increased by one-half, i.e., to approximately 18 seconds. And it would have taken a still longer time had the engineer observed the automobile standing on the tracks when he was 800 feet back from the point of collision and then made even a service application of the brakes. And what is more important it is stipulated in this case that had the train been going at a rate not to exceed 30 miles per hour it could have been brought to a stop by an emergency application of the brakes within a distance of 700 to 1,000 feet. Bearing in mind that plaintiff's decedent within the short space of a second or two in addition to the time he had might have escaped from the automobile, the

court cannot say as a matter of law that operating this train at an excessive and unlawful rate of speed did not deprive plaintiff's decedent of the opportunity to save his life and was not a proximate cause of the accident.

Admittedly the driver of the automobile which struck and propelled the automobile of plaintiff's decedent upon defendant's tracks was guilty of negligence which was a proximate cause of this accident. But notwithstanding this, under the facts disclosed on this appeal it cannot be held as a matter of law that defendant's engineer was not guilty of negligence in the particulars above noted or that his negligence was not also a proximate cause of the accident. This phase of the case clearly presented an issue of fact for the jury. As noted in our former opinion:

"It is elementary that where injury results from the concurrent negligence of two or more, each proximately contributing to the result, recovery may be had against one or more. *Banzhof* v. *Roche,* 228 Mich. 36."

As ordered on the original hearing, the judgment entered in the circuit court should be affirmed, with costs to appellee.

SHARPE and MCALLISTER, JJ., concurred with NORTH, J.