PEOPLE *v.* SIMARD.

1. ABORTION—SUFFICIENCY OF EVIDENCE.

In prosecution for criminally procuring a miscarriage, testimony of girl and mother of boy responsible for pregnancy *held,* sufficient to establish defendant's guilt beyond a reasonable doubt (Act No. 328, § 14, Pub. Acts 1931).

2. SAME—PRELIMINARY EXAMINATION—SUFFICIENCY OF EVIDENCE.

Testimony at preliminary examination of doctor, charged with having criminally procured a miscarriage of a girl of the age of 15 years, *held*, sufficient to bind defendant over for trial (Act No. 328, § 14, Pub. Acts 1931).

3. CRIMINAL LAW—DUTY OF PROSECUTOR—DISCREPANCY BETWEEN TESTIMONY TAKEN AT PRELIMINARY EXAMINATION AND AT TRIAL.

At a trial of one charged with crime the prosecution is duty bound to bring out all of the facts and ask witnesses about any discrepancies between testimony given at the trial and that given at the preliminary examination.

4. ABORTION—CREDIBILITY AND INTEREST OF WITNESS—ARREST OF ACCOMPLICE.

Where mother of boy responsible for pregnancy of girl upon whom defendant was charged with having criminally procured a miscarriage was an accomplice, her son guilty of statutory rape, and mother had admitted that she knew she was violating the law in securing the performance of a miscarriage, it was error to exclude testimony as to whether or not she had been arrested as question of her credibility and her interest in the case were pertinent (Act No. 328, §§ 14, 520, Pub. Acts 1931).

5. SAME—OTHER OFFENSES—MEDICAL CERTIFICATE REQUIRED FOR MARRIAGE.

In prosecution for criminally procuring a miscarriage of a girl of the age of 15 years it was error for prosecutor to state that he sought to show not only the credibility of defendant doctor but the type of practice he was engaged in by asking him on cross examination whether or not he had signed a medical certificate showing parties contemplating marriage were free from venereal disease without a laboratory test having been made as required by statute, as an independent issue was injected into the case having nothing whatever to do with the issue involved (Act No. 328, § 14, Pub. Acts 1931; Act No. 207, Pub. Acts 1937, as amended by Act No. 112, Pub. Acts 1939).

6. SAME—GENERAL REPUTATION—REPUTATION FOR TRUTH AND VERACITY—REQUEST TO CHARGE.

In prosecution for criminally procuring a miscarriage wherein defendant physician offered five witnesses who testified as to his reputation for truth and veracity and two also testified as to his general reputation and prosecution then offered wit-

nesses in regard to his general reputation, it was error to fail to comply with request to charge that jury might consider such testimony (Act No. 328, § 14, Pub. Acts 1931).

Appeal from Saginaw; O'Neill (James E.), J. Submitted April 11, 1946. (Docket No. 89, Calendar No. 43,309.) Decided June 3, 1946.

Adelard T. Simard was convicted of inducing an abortion. Reversed and new trial ordered.

*C. A. Higgs* (*Walter Martin,* of counsel), for appellant.

*Donald W. Gilbert,* Prosecuting Attorney (*Kenneth W. Cole,* of counsel), for the people.

BUTZEL, C. J. Appellant was convicted by a jury of criminally procuring a miscarriage of a girl of the age of 15 years.* We shall refer to her as the "girl" and to the young man, who was responsible for her condition, as the "boy." He was not yet 18 years of age at the time that the illicit relations took place. The mother of the girl suspected pregnancy. An examination of a specimen of the urine submitted to a doctor confirmed the suspicion. Thereupon the girl's mother informed the boy's mother, and after consulting one another they decided that marriage was not desirable, for both the boy and girl were still attending school. The parents agreed that a miscarriage should be induced and for that purpose decided to engage defendant's services. At the first interview, at which the two mothers and defendant were present, the mothers testified the doctor said he did not perform such operations, but they should return the next

* See Act No. 328, § 14, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–14, Stat. Ann. § 28,204).—REPORTER.

night. His fee would be $150. The girl's mother was not present at the subsequent meeting with defendant, nor was she in the office when defendant examined the girl. The boy's mother accompanied the girl on both occasions when the girl went to defendant's office. The boy's mother was the principal witness for the State. Her testimony as to her conversation with defendant, her payment to him, as well as her statement of what she witnessed, together with the girl's testimony, were sufficient to establish defendant's guilt beyond a reasonable doubt.

As defendant on appeal makes no claim that there was not sufficient evidence to establish his guilt beyond a reasonable doubt, it is not necessary to recite the other very unpleasant details except as it may become necessary in discussing questions raised by defendant on appeal.

At the preliminary examination, the girl testified that she was taken to defendant's office early in the evening of October 27, 1944; that she did not know what happened, but that the examination was very brief, and that the following night she went to the defendant's office; that he placed her on the operating table; that he used "spreaders," and all she saw were the "spreaders;" that she gave him $150 in bills; that when he came out from his inner office he stated that miscarriage had already started, and that he did not have to perform the operation; that during the same night she had a miscarriage. She also testified that at the first interview defendant gave her a brown pill which she believed was a physic. The mother of the boy testified that she wanted the boy and girl to marry, but the girl's mother objected; that the doctor said he did not want to handle the money, but they should leave it lying somewhere; he demanded $150;

the doctor took the girl into his office and the girl was in there about a half hour; that he gave the mother credit for the $5 paid for the first examination but demanded the $145 balance before he would perform the operation; that this amount was paid to him; that the second evening when he came out with the girl, he stated that the operation was unnecessary, but he kept the money. The testimony was sufficient to bind the defendant over for trial notwithstanding appellant's contention to the contrary.

At the trial the girl testified how she was taken to defendant's office; that he first exacted a promise from her that she would never know him again, or even recognize him on the street; that he made an examination using "spreaders" which caused her pain; that he also gave her a brown pill; that she returned the following night in accordance with the instructions of the doctor; that he placed her on a chair which was flattened out so as to become a table; that he asked for the money, whereupon she arose and secured it from the mother of the boy; that he inserted some kind of instrument and something burst in her; that he used a large tube called a pipette, and also a long curved instrument; that she went home that evening and early the following morning had a miscarriage.

It is claimed at the trial the judge erred in permitting the prosecutor to question the girl and the boy's mother in regard to testimony previously given at the preliminary examination, which in some respects differed from that given at the trial. Appellant contends that the prosecutor thus undertook to impeach his own witnesses. It is true that at the preliminary examination all the details were not brought out, and the witnesses for the prosecution attempted to shield the defendant as far as

they could. At the trial they told all the details and the prosecution had the right, in fact, was in duty bound, to bring out all of the facts and ask the witnesses about any discrepancies. See *People v. Davis*, 217 Mich. 661. It was desirable to bring out an explanation and clarification of their testimony at the preliminary examination.

The defense in its cross-examination of the boy's mother elicited an admission from her that she knew she was violating the law in securing the performance of a miscarriage. When asked whether she had been arrested, an objection by the prosecutor was sustained. This was error. Under the circumstances this information was pertinent to show the interest of the witness, as she was an accomplice, and her son was guilty of statutory rape.[*] It is true that the prosecutor and police officer or their methods or discretion were not on trial, but the question of her credibility and her interest in the case became pertinent. In *People v. Hare*, 57 Mich. 505, 517, we said:

"The court refused to allow defendant to show the fact that no information had been filed against Billington. Billington was a confessed confederate and an accomplice in the crime charged against McCrone. No conviction could have been had upon this record without his testimony, which shows him to be a man with little conscience, and less regard for truth, if the testimony of the other witnesses is to be believed. It was not only proper, but it was the duty of counsel for the prisoner to place before the jury all the circumstances surrounding the witness upon the stand, as well as any fact which would have any reasonable tendency to affect his credibility; and the fact that he was not informed against for the crime he stood charged with,

---

[*] See Act No. 328, § 520, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115-520, Stat. Ann. § 28.788).—REPORTER.

and that he was treated with the leniency usual in cases of informing accomplices who volunteer to give testimony against their confederates in crime, had its bearing upon his credibility, and we think the circuit judge erred in ruling otherwise.''

On cross-examination of defendant, the prosecutor over objection asked the defendant whether he had signed a marriage certificate given to parties wholly strangers to the case at bar a number of years prior to the commission of the present crime with which defendant was charged. Medical certificates showing freedom from venereal disease were given by him in accordance with Act No. 207, Pub. Acts 1937,* so that applicants might obtain a marriage license. Spaces in the certificates for insertion of the name of the laboratory and the date on which tests were made were left blank. The law provides that the laboratory tests required by the act shall be made by the Michigan department of health or a laboratory approved by the State commissioner of health, but the certificates indicating that no laboratory tests were made were nevertheless signed by defendant contrary to the provisions of the statute. The prosecution thus tried to show that defendant was guilty of a misdemeanor that had not the remotest connection with the crime charged and was in no way similar in character. The prosecutor made the statement before the jury that the exhibit was being introduced not only to show witness's credibility but also the type of practice he was engaged in. While much latitude is allowed in cross-examination to test credibility, the prosecutor cannot bring out independent issues involving other alleged crimes

---

* See, as amended by Act No. 112, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 12704-1 *et seq.*, Stat. Ann. 1944 Cum. Supp. § 25.25 *et seq.*).—REPORTER.

that are entirely dissimilar both in nature and motive and have nothing whatsoever to do with the issue involved. *People* v. *Pinkerton,* 79 Mich. 110; *People* v. *Wright,* 294 Mich. 20. The statement by the prosecutor in connection with the type of practice indulged in was highly improper.

The defendant offered five witnesses as to his reputation for truth and veracity. Two of them also testified as to his general reputation. The prosecution thereupon offered witnesses in regard to the general reputation of the defendant. If the testimony had been limited to defendant's reputation for truth and veracity, a request to charge as to his general reputation could be properly refused. *People* v. *Trahos,* 251 Mich. 592. However, there was also testimony as to his general reputation, and a failure to comply with the request to charge the jury that they might consider such testimony was error. *People* v. *Lane,* 304 Mich. 29.

Other errors claimed are not of sufficient importance to require further discussion, as those of any merit will not occur on a new trial.

The conviction is reversed and a new trial is ordered.

CARR, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred. BUSHNELL, J., took no part in the decision of this case.