**UNITED STATES of America**

v.

**Dorsey K. OFFUTT.**

**Misc. No. 3-55.**

United States District Court
District of Columbia.

Oct. 11, 1956.

Oliver Gasch, U. S. Atty., Edward P. Troxell, Principal Asst. U. S. Atty., William F. Becker, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Warren E. Magee, Charlotte Maskey, Washington, D. C., for defendant.

WILKIN, District Judge (By Designation).

This cause has had an extended history in the courts. It originated in the trial of the case of United States v. Peckham, Criminal No. 579-52 in this Court. 105 F.Supp. 775. At the conclusion of that trial, the presiding judge cited the defendant here, Offutt, who had served as trial counsel for Peckham, for contempt of court, and filed twelve separate charges based on Offutt's conduct during the trial. The Court found the respondent guilty of all the charges, and ordered him committed for ten days to the custody of the United States Marshal.

The Court of Appeals affirmed the trial judge as to four of the twelve findings

of contempt and reduced the punishment to commitment for a period of 48 hours. Offutt v. United States, 1953, 93 U.S.App. D.C. 148, 208 F.2d 842. On appeal, the Supreme Court, under the authority of Cooke v. United States, 1925, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767, and in the exercise of the Court's supervisory authority over the administration of criminal justice in the federal courts, held that the charges should be tried before a judge other than the one before whom the contempt was alleged to have originally arisen. Offutt v. United States, 1954, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11.

In compliance with that decision, the United States Attorney filed in this court an application for an order to the defendant herein to show cause why he should not be adjudged in criminal contempt. In re Dorsey K. Offutt, Miscellaneous No. 3–55. Subsequently, a hearing was held before another judge, in accordance with the mandate of the United States Supreme Court, on the charges contained in the order to show cause (which were identical with the charges which had previously been affirmed by the Court of Appeals). Respondent was then found guilty on two of the four charges.

The case was again appealed. It should be noted that while on appeal, the United States was made a party plaintiff by order of the Court of Appeals, and the respondent was denominated "defendant." That court then reversed and remanded the cause to the District Court as a result of the failure of the trial judge to receive evidence outside of the record, in mitigation or exculpation of the acts of the defendant. Offutt v. United States, D.C.Cir.1956, 232 F.2d 69.

Defendant appealed the action of the Court of Appeals, however, and the United States Supreme Court denied certiorari on June 11, 1956. Offutt v. United States, 351 U.S. 988, 76 S.Ct. 1049. A petition for rehearing of that action has been overruled.

### Summary of Evidence

This case came on for trial on two of the four charges presented in the hearing on the rule to show cause. They were I and III.

"I. On numerous occasions, he made insolent, insulting and offensive remarks to the court, and was guilty of gross discourtesy to the court. * * *

"III. On several occasions, he asked of witnesses questions that were highly prejudicial to the witness and for which there was no foundation. * * * "

Counsel for the plaintiff, in support of the two charges, offered in evidence and read excerpts from the transcript of the Peckham trial. Plaintiff then rested.

Counsel for defendant, after an opening statement, called eleven witnesses and proffered other witnesses for cross examination whose testimony would have been cumulative. The defendant then rested.

Counsel for the plaintiff then called two rebuttal witnesses who had served as jurors in the Peckham trial, and proffered two more witnesses for cross examination whose testimony was said to be cumulative.

The witnesses called by the defendant were lawyers who had been present in court during part or all of the Peckham trial. They testified as to conduct of the judge and the attorney for the defendant during that trial. They detailed statements and conduct of the trial judge which they thought had provoked the challenged acts and statements of the defendant in this case. They testified that in their opinion the defendant had been respectful and proper. On cross examination some of them admitted that the defendant's conduct at times had "not been exemplary," and that he had been "persistent," but they thought the conduct of the trial judge caused the acts of counsel. One witness referred to the altercations between judge and counsel as a "conflict of personalities." They also said that Offutt had consulted them about

the case and they had advised him that it would be necessary for him to state for the record the grounds for his objections to conduct of the judge, and Offutt himself testified that that was why he made statements in open court regarding the judge.

The two witnesses called in rebuttal said that Offutt had disobeyed orders and directions of the judge, and that in their opinion such conduct was the occasion of the apparent friction between judge and counsel. They admitted that at times the judge had shown anger by facial expression, tone of voice and gesticulations, but they thought such anger had been provoked by trial counsel.

### Effect of Evidence

Except for the testimony of the defendant Offutt, the oral evidence does not vary the record of the Peckham trial or the impressions created by a reading of the transcript. The testimony of defendant Offutt disclaims evil or contumacious intent. It tells why Offutt did the things now charged or cited as contumacious, and what the basis or reason was for certain questions alleged to have "no foundation."

A consideration of all the oral testimony confirms the effect created by a mere reading of the transcript and record of the Peckham case. After giving due regard to the testimony of Offutt regarding his intention, purpose, and the factual basis of his conduct, the question remains, Does his conduct as revealed by the record constitute contempt of court?

### Analysis of Former Decisions

In answering that question, this Court is at once confronted by the decisions and opinions of the Court of Appeals and of the Supreme Court, cited by counsel on both sides of this case. The Court of Appeals, 93 U.S.App.D.C. 136, 210 F. 2d 693, 702, reversed the conviction in the Peckham case because of conduct of the trial judge which it concluded "demonstrated a bias and lack of impartiality." In determining the first appeal of Offutt from the finding of contempt, the Court of Appeals [93 U.S.App.D.C. 148, 208 F.2d 842, 843] said that the petitioner's conduct could not "be considered apart from that of the trial judge", and reduced the sentence because of the conduct of the trial judge which they had mentioned when reversing the conviction in the Peckham case.

The majority opinion of the Supreme Court states that the whole record amply supports this characterization of the conduct of the trial judge by the Court of Appeals. Because of the attitude of the trial judge in the Peckham case, they remanded the contempt proceedings for retrial in the District Court by a judge other than the judge who presided at the Peckham trial.

On the other hand, counsel for the prosecution called this Court's attention to the fact that the Court of Appeals in its first opinion had affirmed the finding on four of the charges of contempt. The Court of Appeals in that case considered the improper conduct of the judge as grounds for mitigation, but the court did not absolve the petitioner Offutt from all wrong doing.

The Supreme Court in the majority opinion said [348 U.S. 11, 75 S.Ct. 14], "Nor are we unmindful of the fact that the ultimate finding of reprehensible misconduct by petitioner was sustained by the Court of Appeals" * * * and further: "We are not intimating that the Court of Appeals was not justified in finding ample support for its conclusion that the trial judge was warranted in deeming petitioner's conduct as such contemptuous."

The Supreme Court reversed the conviction because it concluded that the accused should have had a trial before a different judge. Three of the Justices dissented, saying that they would affirm the judgment of the Court of Appeals, and one of the dissenting judges said, "This case goes back to the District Court for hearing by another judge on charges as to which, on the record, this Court admits petitioner is guilty. It is only a question of how much punishment he shall receive."

### Analysis of Evidence and Law

This Court ordinarily has no authority and no occasion to pronounce judgment on the work or conduct of another judge of this court. The last mandate from the Court of Appeals, however, ordered a retrial and consideration of such evidence as might be offered in addition to the record of the Peckham trial, for the purpose of showing the conduct and circumstances of such trial and what effect, if any, the conduct of the trial judge had on the challenged conduct of trial counsel. Having considered all the evidence in accordance with the mandate, this Court is confronted by three questions:

(1) Did the conduct of the trial judge in the Peckham case justify, excuse or exculpate counsel for conduct alleged to be contumacious (and so found to be by the reviewing courts)?

(2) Did the conduct of the trial judge extenuate, mitigate or ameliorate the conduct of trial counsel, if found to be improper?

(3) If the conduct of trial counsel was not justified or excused by the conduct of the trial judge, what should the sentence of punishment be in view of extenuating circumstances?

### (1)

■ It is the finding and judgment of this Court that the conduct of the trial judge did not justify or excuse the challenged conduct of trial counsel. It is the opinion of this Court that improper conduct of a trial judge can never justify or excuse contemptuous conduct of a trial attorney. It is, of course, the duty of a lawyer to protect the rights of his client, but vigorous advocacy should never extend to contempt of court. He is obliged at times to state for the record the reasons for his motions or objections, but that should be done decorously in accordance with the rules of trial practice. If denied by the trial judge an opportunity to state his reasons or objections, he should rest content that an appellate court will consider his proffer and allow him to state his reasons and objections on appeal.

One of the witnesses called by the defendant testified that he had told Offutt that he should be respectful whatever the conduct of the judge. The reason for this strict rule is that the trial judge represents the sovereignty of the law and government. If the man who is counsel meets the man who is judge on the street, in the market place, or on the playing field, they are governed by the same rules of conduct that apply to other men, and they stand on equal footing. When in court, however, the judge, even in spite of human frailties, still is the representative of the sovereign power, and counsel must always respect the office whatever his opinion of the incumbent. Two wrongs do not make a right, and misconduct cannot obliterate other misconduct. It is the duty of all participants in a trial to maintain the dignity and good order of the courtroom. The practical requirements of orderly procedure also support this rule.

■ Rules of Parliamentary Practice and Roberts' Rules of Order, which govern assemblies and meetings forbid further argument after an issue is settled, and one who speaks on a determined issue is out of order. So the rules of trial practice, which govern a more formal procedure, forbid any argument after the court has ruled on a motion, an objection, or other issue. Counsel should not again address the court regarding such a settled matter without leave first obtained. Even if all the criticisms and accusations against the judge's conduct should, for purposes of argument, be admitted, still in this case, as in all such cases, there came a time when counsel should have been silent. He should have trusted that his silence would plead his cause on appeal. Further contention or argument became not only futile, but improper.

This rule is supported not only by decisions and practice, but is based on a fundamental principle of life which has been exemplified by the great trials of history. Such trials demonstrate the wisdom of silence when further contention is futile. With magnificent equanimity and sub-

mission, Socrates accepted the death sentence of the popular court of Athens, and when his friends arranged the means for his escape from prison, he declined to take advantage of such arrangements, saying that it was the duty of a citizen to obey the law even when its sentence is unjust.

Jesus of Nazareth stood mute before Pilate, in spite of insults and scourgings. When He saw that Pilate feared the Emperor and was determined to please the people who cried for crucifixion, Jesus kept silent, and His silence redounds to His glory.

Sir Thomas More's farewell to his judges is another magnificent example of the transcendency of meekness over injustice. Chief Justice Coke himself set an example for lawyers when he was called to account before the king. When the king persisted in the assertion of his arbitrary will, Coke appropriately replied, "It would not become me further to argue with your Majesty."

A modern exemplification of this principle is found in a book just recently published, entitled "In Silence I Speak: The Story of Cardinal Mindszenty," written by George N. Shuster, President of Hunter College. The author says: "Today the Cardinal's silent martyrdom is more eloquent than all the political clichés that try to compromise with totalitarian ideology." The author concludes: "Americans must believe in something nobler than themselves if they desire the rest of the world to believe in it, too."

So members of the legal profession must believe in the ideals of their profession more than in themselves if the sovereignty of law is to be respected. This fundamental principle of life was stated by Gerard Groote, one of the most learned men of the 14th Century, in these words: "By patience and humility we become stronger than all our enemies."

■ Judicial impropriety cannot be considered a complete defense, but only an extenuating circumstance.

### (2)

When a vigorously contested trial, lasting more than fourteen days, develops personal animosity and acrimonious language, it is almost as impossible to determine the definitive cause and comparative responsibility for each impropriety as it is to unscramble eggs. The trial of this case, however, did develop facts and circumstances which this Court has to consider. It raised questions on which this Court should announce its ruling. Charge No. III will be considered first.

### Charge No. III

The essence of the charge is that the defendant asked highly prejudicial questions for which there was no foundation. During this trial it was conceded by counsel that the word "foundation" should be considered in two parts: Foundation in fact, and foundation in law.

■ The evidence revealed that the defendant had some information of facts which would supply a foundation for the questions asked. For instance, he had been informed that the prosecuting witness in the Peckham trial had been taken by police officers to Police Headquarters for questioning. He thought that information indicated an arrest, and the broad definition of arrest supports his interpretation. A more diligent investigation would have revealed that there had been no arrest of the witness in the sense which his question implied. He was not legally justified in asking the witness WHEN she was first arrested. If warranted at all, the question should have been, Were you arrested? The rules of evidence and the law of the District of Columbia prohibit such a question for the purpose of impeaching the credibility of the witness. A witness' credibility can be impeached only by evidence of conviction of crime. 3 Wigmore, Sec. 980a; D.C.Code, § 14–305; Sanford v. United States, 69 App.D.C. 44, 98 F.2d 325. The defendant contended that he was not asking the question for the purpose of impeachment, but to support his contention that the abortion charged against Doctor Peckham had in fact been committed by

the prosecuting witness herself, and that she had been promised immunity from prosecution. This Court doubts the legal propriety of such question in the circumstances, but there is authority for questions of that character. Wigmore, Sec. 967; People v. Simard, 1946, 314 Mich. 624, 23 N.W.2d 106. The Court is of opinion, however, that the asking of such a question in the circumstances did not of itself constitute contempt.

As to the questions regarding prior abortions, the evidence revealed that factual information had been obtained by defense counsel from doctors and hospital records to support the question. This Court is of opinion, however, that such questions were not proper in law. Doctor Peckham was being tried for an abortion committed in 1952. Questions regarding abortions committed in 1947 or 1950 were irrelevant. But here again this Court cannot find that such irrelevant questions in and of themselves constituted contempt. This Court doubts whether any charge of contempt would have been made if such questions were the only basis for it. They were no doubt cited along with other charges to show the defendant's general attitude. It is the finding and judgment of the Court that the questions asked had foundation in fact, but some of them lacked foundation in law.

### Charge No. I

■ Charge No. I alleges that on numerous occasions the defendant made insolent, insulting and offensive remarks to the Court, and was guilty of gross discourtesy to the Court. In support of this charge, counsel for plaintiff cited forty-six excerpts from the transcript of the Peckham case, and offered the evidence of certain jurors. The defendant contended that what he said was true, and that he said it in order to make a record as required by Billeci v. United States, 87 U.S.App.D.C. 274(12), 184 F.2d 394, 24 A.L.R.2d 881, and in order to comply with the advice given him by counsel whom he had consulted. Advice of counsel is not a defense to a charge of contempt. Counsel for defendant stated that

such evidence tended to show zeal for client rather than insolent or offensive attitude toward the court.

Defendant contended further that he was justified in making the statements in the manner they were made by a well-established practice in this court of making such statements during a bench conference, and by the fact that the judge had refused his request for a bench conference and had ordered him to make his statements and objections in open court. Transcript of June 5, page 51 (616).

It is this Court's opinion that such statements of objections and reasons should always be made to the reporter in a voice audible to the judge, but not to the jury. When making objections to the judge's facial expressions, gestures, and statements, counsel should have approached the reporter and made them in a low voice. If the Court would not permit such presentation, counsel should have rested content that the record would show his proffer. Butler v. United States, 88 U.S.App.D.C. 140(9), 188 F.2d 24. To make such statements in open court and then bandy words with the court as to the truth and propriety of his statements was grossly improper.

Consideration of the excerpts of the transcript and the testimony and arguments brings this Court to the conclusion that the inciting cause of the asperity and improprieties in the Peckham trial was what may be appropriately and simply termed "back talk." Webster's Dictionary defines "back talk" as "impudent or argumentative reply, especially from a junior or a subordinate." The transcript is weighted with retorts which come within that definition (See Findings of Fact). Counsel also asked impertinent and improper questions of the court, and disputed the word of the judge, and frequently repeated derogatory assertions. Such conduct, together with counsel's failure to comply with orders of the court, such as directions to return to counsel table and be silent, reveal an attitude toward the presiding judge which cannot be tolerated or condoned, if order-

ly trial practice and the dignity of judicial administration is to be preserved. Such conduct of counsel is contempt per se. Neither ignorance, nor advice of counsel, nor zeal for client, can alter the contumacious character of such conduct.

Contempt usually occurs when self-assertion predominates over respect for authority. There is no place for selfishness or pride in the service of the law. A great lawyer said two thousand years ago, "The law is a voiceless magistrate, and a magistrate is the voice of the law." Since the law is impersonal, there should be no personal feeling in the practice and administration of the law. A man is never more upright in mind and heart than when he genuflects before the Supreme Authority. A lawyer is never more honorable and respectable than when he is humble before the law. Humility forestalls humiliation.

█ It is the finding and the judgment of this Court that the defendant is beyond all doubt guilty of contempt of court. That brings us to the third question.

### (3)

█ As to the sentence to be imposed, the Court is mindful that the Court of Appeals, after reviewing the record of the Peckham case and the record of the first contempt trial, reduced the sentence of ten days custody, imposed by the trial court, to a sentence of forty-eight hours in the custody of the Marshal. A consideration of all the evidence offered in this last trial induces the conclusion that a sentence committing the defendant to the custody of the Marshal for forty-eight hours is just and proper in this case. The sentence of this Court will, therefore, be that the defendant be committed to the custody of the United States Marshal for forty-eight hours, and that execution of the sentence begin at 10 a. m. o'clock on October 13, 1956.

Findings of fact and conclusions of law have been filed as a supplement to this opinion.

### Findings of Fact

1. That Dorsey K. Offutt, the defendant herein, was the attorney for Henry L. Peckham, Jr., in Criminal Case No. 579–52.

2. That the said criminal case against Henry Lincoln Peckham, Jr., was tried before the Honorable Alexander Holtzoff, United States District Judge for the District of Columbia.

3. That the defendant herein, Dorsey K. Offutt, acted in an improper manner in the following particulars during the said trial of United States v. Henry Lincoln Peckham, Jr.:

(1) On June 3, 1952, the defendant in a discourteous manner stated to Judge Holtzoff that he was entitled to conduct his examination without interruption by the Court. Transcript of proceedings in United States v. Peckham, Criminal No. 579–52 (hereinafter referred to as transcript), at metered page 231.

(2) That on June 3, 1952, the defendant, Dorsey K. Offutt, asserted without foundation and improperly that the prosecution was brought in bad faith. Transcript, at metered page 245.

(3) That on June 3, 1952, the defendant, Offutt, addressed the Court in a discourteous manner in that during his interrogation of a witness he said: "Listen to that, your Honor." Transcript, at metered page 263.

(4) That on June 3, 1952, the defendant Offutt on two occasions provocatively challenged the Court's right to note a witness' testimony and objected to the Court's interruptions. Transcript, at metered page 296.

(5) That on June 3, 1952, the defendant Offutt again provocatively challenged the Court's right to interrupt counsel. Transcript, at metered page 379.

(6) That on June 3, 1952, the defendant Offutt accused the Court of denying him the right to go to the bathroom. The record fails to disclose any basis for this accusation. Transcript, at metered page 402.

**118**

(7) That on June 4, 1952, the defendant Offutt accused the Court of a misstatement of fact. Transcript, at metered page 409.

(8) That on June 4, 1952, the defendant without justification reminded the Court that the Court had used the word "stupid" on the previous day. Transcript, at metered page 412.

(9) That on June 4, 1952, the defendant Offutt without justification again reminded the Court of the use of the word "stupid." Transcript, at metered page 413.

(10) That on June 4, 1952, the defendant Offutt provocatively objected to the Court raising his hand and leaning forward. Transcript, at metered page 422.

(11) That on June 4, 1952, the defendant Offutt characterized the Court's conduct on the previous day as screaming and jumping forward. Transcript, at metered page 423.

(12) That on June 4, 1952, the defendant Offutt without justification objected to the Court asking questions of the witness. Transcript, at metered page 523.

(13) That on June 4, 1952, the defendant without justification objected to the Court asking questions of a witness. Transcript, at metered page 528.

(14) That on June 5, 1952, the defendant Offutt in a discourteous manner remarked to the Court that he was startled and disturbed by the moving of the Judge. Transcript, at metered page 591.

(15) That on June 5, 1952, the defendant Offutt again provocatively reminded the Court that the Court had used the word "stupid" on the prior occasion (June 3, 1952). Transcript, at metered page 637.

(16) That on June 5, 1952, the defendant Offutt in a discourteous manner again accused the Court of interrupting the examination of a witness. Transcript, at metered page 637.

(17) That on June 5, 1952, the defendant Offutt insolently told the Court that he would like to conduct his examination of a witness without being interrupted by the Court. Transcript, at metered page 655.

(18) That on June 5, 1952, the defendant Offutt, with reference to an occasion which had transpired after the Marshal had adjourned the Court, improperly and offensively accused the Court of leaving the courtroom while Offutt was making a motion. Transcript, at metered page 672.

(19) That on June 5, 1952, the defendant Offutt in arguing with the Court about the testimony of a witness peremptorily challenged the Court. Transcript, at metered page 682.

(20) That on June 5, 1952, the defendant Offutt again discourteously objected to an interruption by the Court when the Court sought to have the Court Reporter read back a question to a witness. Transcript, at metered page 707.

(21) That on June 5, 1952, the defendant Offutt objected in a discourteous manner to a statement by the Court to the effect that it is the Court's duty to protect witnesses. Transcript, at metered page 709.

(22) That on June 5, 1952, the defendant Offutt insultingly objected to an interruption by the Court when the Court was attempting to allow a witness to complete his answer. Transcript, at metered page 738.

(23) That on June 6, 1952, the defendant Offutt again reproached the Court in a discourteous manner for observing that defendant Offutt had been over certain subject matter twice and that the Court would not permit further questions thereon. Transcript, at metered page 770.

(24) That on June 6, 1952, the defendant Offutt insolently characterized a ruling by the Court that a witness who had testified might remain in the courtroom

as a "long speech" to which he objected. Transcript, at metered page 791.

(25) That on June 6, 1952, the defendant Offutt also discourteously and provocatively characterized the Court's ruling noted in the previous finding as a "long dissertation" to which he objected. Transcript, at metered page 791.

(26) That on June 6, 1952, the defendant Offutt interrupted the Court and in a discourteous manner said: "May we come to the bench and get this straightened out." Transcript, at metered page 842.

(27) On June 9, 1952, the defendant Offutt provocatively characterized certain actions of the Court at a bench conference stating: "I object to Your Honor moving your hand as you did just then, and gesticulating, and I want to put on the record those things." Transcript, at metered page 886.

(28) On June 9, 1952, the defendant Offutt objected improperly to the tone of voice of the Court and the shaking of the Court's hand, and immediately thereafter offensively and provocatively repeated his objection to the tone of the Court's voice. Transcript, at metered page 919.

(29) On June 9, 1952, the defendant Offutt again objected in a discourteous manner to the Court's gestures and mannerisms. Transcript, at metered page 939.

(30) On June 9, 1952, the defendant Offutt discourteously accused the Court of gesturing and raising his voice from time to time and improperly charged that at the moment the Court was raising his voice. Transcript, at metered page 940.

(31) On June 9, 1952, the defendant Offutt persisted on two subsequent occasions in arguing provocatively with the Court on the subject of the Court's tone of voice after he had stated his position. Transcript, at metered page 940.

(32) On June 9, 1952, the defendant Offutt persisted in arguing repetitiously

with the Court about the Court's voice and gestures after he had stated his position. Transcript, at metered page 1026.

(33) On June 9, 1952, the defendant Offutt improperly and provocatively accused the Court of characterizing a question as "stupid" when the record shows the Court had merely ruled that the question was excluded. Transcript, at metered page 1043.

(34) On June 10, 1952, the defendant Offutt, speaking at the bench, contentiously and repeatedly asserted that the Court had refused to allow defendant to make objections at the bench concerning the Court's gestures, intonations of voice and posture, and continued to argue after the Court had said that it would not permit him to argue. Transcript, at metered page 1068-9.

(35) On June 10, 1952, the defendant Offutt insolently accused the Court of raising his voice and shouting after the Court had found it necessary three times to repeat the instruction that a certain transcript be handed to the Court. Transcript, at metered page 1075.

(36) On June 10, 1952, the defendant Offutt discourteously declared to the Court: "I object to your putting your hand up like that," after the Court had directed counsel three times to return to counsel table. Transcript, at metered page 1081.

(37) On June 10, 1952, the defendant Offutt insolently made an objection to the Court's interruption when the Court merely asked a witness if the witness had completed his answer. Transcript, at metered page 1092.

(38) On June 10, 1952, the defendant Offutt discourteously argued with the Court, charging that the Court had distracted his attention after the Court had observed that the witness then being examined was entitled to courteous treatment. Transcript, at metered page 1092.

(39) On June 10, 1952, the defendant Offutt acting with gross discourtesy re-

quested that the record show that the Court leaned forward, shook his head, and raised his voice after the Court had excused a witness because defendant refused to abide by the Court's ruling that the witness would be excused if defendant failed to direct questions to the witness. Transcript, at metered page 1098.

(40) On June 10, 1952, the defendant Offutt insolently objected to the Court raising the Court's hand and then repeated the remark after the Court had terminated testimony to rule on a government objection. Transcript, at metered page 1131.

(41) On June 10, 1952, the defendant Offutt insolently challenged the Court for interrupting the respondent after the Court excluded a question, and defendant then discourteously said: "May I ask my question before an objection is made and not be interrupted?" Transcript, at metered page 1154.

(42) On June 10, 1952, the defendant Offutt reprimanded the Court for smiling. Transcript, at metered page 1168.

(43) On June 11, 1952, the defendant Offutt insolently and repeatedly declared that the Judge had yelled at him and had raised his voice when the Court had ruled that counsel could then ask the witness a question, and defendant indulged in back talk. Transcript, at metered page 1341.

(44) That the defendant Offutt asked prejudicial questions which were without foundation in law. Transcript of June 2, at metered page 156, and transcript of June 5, at metered pages 620 and 621.

## Conclusions of Law

The Court concludes that it has been shown beyond a reasonable doubt that the defendant was guilty of misbehavior in the presence of the Court, and that such misbehavior was contumacious and tended to obstruct the administration of justice, and that defendant is, therefore, guilty of contempt of court.