PEOPLE v GEORGE JONES

OPINION OF THE COURT

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—PRESERVING QUESTION.

An objection by a defendant in a criminal case to the trial court's instructions to the jury will not be considered on appeal absent a showing of substantial injustice where defense counsel did not object to the instructions at trial and where defense counsel expressed satisfaction with the instructions when asked by the trial court (GCR 1963, 516.2).

2. CRIMINAL LAW—EVIDENCE—DEFENDANT'S CHARACTER—INSTRUCTIONS TO JURY.

It is normally error to refuse a timely request to charge the jury upon the effect of character testimony where the defendant in a criminal case has offered evidence of his good character at trial.

3. CRIMINAL LAW—EVIDENCE—DEFENDANT'S CHARACTER—INSTRUCTIONS TO JURY.

The trial court in a criminal case properly denied a defendant's request to charge the jury upon the effect of character testimony where the purported character evidence offered was defendant's own testimony that he was married, had ten children, and was honorably discharged from the armed services because the defendant's testimony consisted of factual statements of a neutral character.

4. CRIMINAL LAW—EVIDENCE—HEARSAY.

Hearsay evidence in a criminal case is testimony in court of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 824.
[2, 3] 53 Am Jur, Trial §§ 715–729.
[4] 29 Am Jur 2d, Evidence §§ 493–497.
[5] 29 Am Jur 2d, Evidence § 500.
[6] 53 Am Jur, Trial § 637.
[7] 29 Am Jur 2d, Evidence § 497.
[8] 29 Am Jur 2d, Evidence § 598.

thus resting for its value upon the credibility of the out-of-court asserter.

5. CRIMINAL LAW—EVIDENCE—HEARSAY—IMPEACHMENT—FOUNDATION.

Testimony by a rebuttal witness in a criminal case that a previous defense witness had told him in the court hallway prior to testifying that he had received $20 from the defendant to testify on his behalf and that if the rebuttal witness would give him another $20 he would leave and not testify was hearsay, and where no foundation was laid for the impeachment of the defense witness by proof of prior inconsistent statements, allowance of the rebuttal witness's hearsay testimony into the record as an attack on the defense witness's credibility was erroneous.

6. CRIMINAL LAW—PROSECUTOR'S REMARKS—PRIOR OFFENSES.

A remark by a prosecutor in his opening statement in a homicide trial that the prosecution would show that prior to the date of the killing the defendant was seen to have in his possession a pistol did not entitle the defendant to a mistrial where the trial court in denying the motion for mistrial noted that the mere statement that defendant had a gun did not impute any prior crime to him, and where defendant admitted during trial prior ownership and possession of a gun, although not the one that killed the decedent.

CONCURRENCE BY J. H. GILLIS, P. J.

7. CRIMINAL LAW—EVIDENCE—HEARSAY—EXCEPTIONS—STATE OF MIND.

*Out-of-court declarations offered in a criminal case to show circumstantially the feelings, knowledge, or state of mind of the declarant are not subject to attack as hearsay since they are not offered to show the truth of the out-of-court statement, but only that such a statement was made.*

8. CRIMINAL LAW—EVIDENCE—OUT-OF-COURT DECLARATIONS—BIAS—FOUNDATION.

*Testimony by a rebuttal witness in a criminal case that a previous defense witness had told him in the court hallway prior to testifying that he had received $20 from the defendant to testify on his behalf and that if the rebuttal witness would give him another $20 he would leave and not testify, while having all the earmarks of hearsay, was nonetheless admissible to show the declarant's state of mind, bias, or motive as a witness; however, the failure of the trial court to impose the require-*

*ment of preliminary questions to the witness sought to be impeached as a foundation for the admission of the rebuttal testimony was error.*

Appeal from Recorder's Court of Detroit, John L. Kadela, J. Submitted Division 1 May 8, 1973, at Detroit. (Docket No. 14071.) Decided June 27, 1973.

George Jones was convicted of manslaughter. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas P. Smith,* Assistant Prosecuting Attorney, for the people.

*William R. Stackpoole,* for defendant on appeal.

Before: J. H. GILLIS, P. J., and HOLBROOK and BASHARA, JJ.

HOLBROOK, J. Defendant was charged with the second-degree murder of Leroy Adams on August 30, 1971. Adams was shot five times at defendant's home. Defendant admitted shooting Adams but claimed self-defense. He was convicted of manslaughter in a jury trial and was sentenced to 5 to 15 years in prison on February 10, 1972. He raises four issues on appeal.

Defendant first objects on various grounds that the trial court's jury instruction on the matter of self-defense was erroneous. At no time did defense counsel object to the standard form instruction taken from 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1694, pp 2047–2048. Moreover, when the trial judge asked after all the instruc-

tions were given whether defense counsel was satisfied with them, defense counsel answered affirmatively except as to one noted objection to be discussed below. Any objection to the self-defense instruction now is therefore untimely and will not be considered on appeal in the absence of a showing of substantial injustice. *People v Miron,* 31 Mich App 142; 187 NW2d 497 (1971); GCR 1963, 516.2.

Defendant next objects that it was error for the trial court to refuse to instruct the jury as timely requested concerning the good character of the defendant. No character witnesses were offered by the defense at trial. The only purported character evidence offered was defendant's own testimony that he was married, had ten children, and was honorably discharged from the armed services. Where a defendant offers evidence of his good character, it is normally error to refuse a timely request to charge the jury upon the effect of the character testimony. *People v Simard,* 314 Mich 624, 631; 23 NW2d 106, 109 (1946). At the most defendant's testimony consisted of factual statements of a neutral character, so no instruction was required. *People v Knoll,* 258 Mich 89; 242 NW 222 (1932).

Defendant thirdly objects that the trial court erred in allowing rebuttal testimony which indicated that a defense witness stated he was being paid for his testimony. Defense witness Nathaniel Griffith testified that he saw defendant and deceased meet on a street the day of the shooting and have an argument about a debt between them and about the slashing of the tires on defendant's truck. Griffith said the decedent pulled a gun and threatened to kill the defendant, and the defendant turned his back and walked away. Decedent,

according to Griffith, later offered him and some others $800 to kill the defendant. Willie Adams, son of the decedent, was then recalled to the stand by the prosecutor and on redirect examination testified, first before the judge alone and then before the jury, that Nathaniel Griffith had told him in the court hallway prior to testifying that he had received $20 from the defendant to testify on his behalf and if Adams gave him another $20 he would leave and not testify. Defense counsel objected to this testimony as hearsay. The trial judge allowed the testimony to be admitted on the ground it would only go to the credibility of Nathaniel Griffith. Defense counsel further objected that no foundation had been laid for the impeachment of Griffith during his previous examination. Hearsay evidence is testimony in court of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. McCormick, Evidence (2d ed), § 246, p 584. The testimony of Willie Adams in issue here was, therefore, hearsay if offered for its substance. If the testimony was offered to show the bias or interest of the witness it would only be relevant if truthful, and therefore would still need be excluded as hearsay, unless some exception to the hearsay rule applies. We know of no hearsay exception that would be applicable here.

However, otherwise inadmissible evidence may be used to impeach the testimony of the defendant. *People v Graham,* 386 Mich 452; 192 NW2d 255 (1971). The trial judge allowed the testimony's admission as going to the credibility of Nathaniel Griffith, *i.e.,* to impeach his testimony. Of course, Griffith could be impeached by showing his prior

statements were inconsistent with Adams' testimony, but he had not been questioned about the alleged conversation with Adams in the court hallway, so there were no statements of his that could be subsequently impeached by Adams' testimony. McCormick, Evidence (2d ed), § 40, pp 80–81; *Oppenheim v Rattner,* 6 Mich App 554, 559; 149 NW2d 881, 883 (1967). In *Oppenheim* this Court found error where the trial court allowed an eyewitness, over objection of counsel, to testify concerning what the eyewitness said to the plaintiff's driver and there had been no prior denial of such conversation by the driver. *Cf. People v Finnister,* 33 Mich App 283; 189 NW2d 835 (1971). See, also, 3A Wigmore on Evidence (Chadbourn Rev) § 953, pp 800–801. No foundation was laid for the impeachment of Nathaniel Griffith by proof of prior inconsistent statements, and therefore the allowance of Willie Adams' testimony into the record as an attack on Griffith's credibility was erroneous. *Ebel v Saginaw Road Commissioners,* 386 Mich 598, 608; 194 NW2d 365, 369 (1972); 98 CJS, Witnesses, § 480, pp 362–364. This is not the case where a subsequent witness's testimony is allowed in evidence to contradict a different story told by a previous witness. See, *e.g., People v Rodgers,* 388 Mich 513; 201 NW2d 621 (1972). Since Nathaniel Griffith was the sole person to corroborate defendant's own testimony concerning threats made by the deceased against the defendant the day of the killing, which testimony had an obviously crucial bearing on defendant's claim of self-defense, we cannot say that the admission of Adams' testimony was harmless error beyond a reasonable doubt. *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709, 713 (1972).

Defendant finally objects to the remark by the

prosecutor in his opening statement that the pros-
ecution would show that prior to the date of the
killing the defendant was seen to have in his
possession a pistol. At the time the remark was
made defense counsel moved for a mistrial. In
denying the motion the trial court noted: "At this
point, the mere statement that he had a gun does
not impute any prior crime to him, and I don't
think there is". During trial defendant admitted
the prior ownership and possession of a gun, al-
though not the one that killed Leroy Adams. In
light of the judge's comment and the defendant's
admission of prior gun ownership, we cannot say
that the error, if any, in the prosecutor's remark
was prejudicial.

Reversed and remanded for a new trial.

BASHARA, J., concurred.

J. H. GILLIS, P. J. *(concurring)*. I write separately
in an attempt to clarify what is apparently a
frequently misunderstood rule regarding the prohi-
bition of hearsay evidence.

Hearsay is that evidence offered in court of a
statement made out of court to show the truth of
matters asserted therein, and thus resting for its
value upon the credibility of the out-of-court de-
clarant. McCormick, Evidence (2d ed), § 246, p 584;
*People v Willie Solomon,* 47 Mich App 208; 209
NW2d 257 (1973).

The testimony which the majority places within
that definition offered by the rebuttal witness is as
follows:

"*Q.* Now, Mr. Adams, you say that somebody ap-
proached you out in the hall?
"*A.* Yes.

\* \* \*

"*Q.* Did Nate *[the previous defense witness]* say anything to you in regard to testifying in this case?

"*A.* Yes.

"*Q.* What did Nate tell you?

"*A. He told me that Mr. Jones [defendant] paid him— or would pay him $20 to come down here and testify;* and if I gave him $20, he would go back and he wouldn't come on the stand—he would go back home and get high because they didn't really care what happened." (Emphasis supplied.)

Certainly, this evidence is of a statement made out of court by a presently nontestifying declarant. The emphasized portion of the witness's statement referring to what defendant had told the declarant, if offered for the truth of the matter asserted therein, *(i.e.,* whether, in fact, defendant paid the declarant to testify) would be hearsay. *Even if* offered in court by the *declarant* for that purpose, it would still be hearsay, but it would be admissible as an admission attributed to the defendant.

However, the second portion of the witness's statement of what the out-of-court declarant stated to him, *(i.e.,* the offer to leave for an additional sum) is not hearsay. Out-of-court declarations offered to show circumstantially the feelings, knowledge, or state of mind of the declarant are not subject to attack as hearsay since they are not offered to show the truth of the out-of-court statement, but only that such a statement was made. 6 Wigmore on Evidence (3d ed), § 1790, pp 237–238; 29 Am Jur 2d, Evidence, § 497, p 555. In many cases the materiality of the out-of-court assertion depends not on the truth of the assertion, but whether it was said at all. See *Matthews v Aluminum Acceptance Corp,* 1 Mich App 570; 137 NW2d 280 (1965); *Koch v Production Steel Co,* 344 Mich 161; 73 NW2d 323 (1955).

In *Bridges v State,* 247 Wis 350, 364; 19 NW2d 529, 535 (1945), the charge was taking indecent liberties with a minor. During trial, testimony from police officers established that on prior occasions the victim had been able to give a detailed description of the scene of the assault. Said the Supreme Court of Wisconsin:

"It is true that testimony as to such statements was hearsay and, as such, inadmissible if the purpose for which it was received had been to establish thereby that there were in fact the stated articles in the room, or that they were located as stated * *. * . *That, however, was not in this case the purpose for which the evidence as to those statements was admitted. * *. * those statements, although they were extrajudicial utterances, constituted at least circumstantial evidence that [the victim] then had such knowledge; and that such state of mind on her part was acquired by reason of her having been in that room and house prior to making the statements." (Emphasis supplied.)

The same can be said of the rebuttal testimony offered in the case at bar. It has value for impeachment purposes since it shows the declarant to be somewhat unprincipled. In that same regard, it matters not whether, in fact, the declarant had been paid to testify by the defendant; the issue is whether the declarant made that statement in conjunction with his offer to leave without testifying for an additional sum.

Thus, while the testimony offered in court had all the earmarks of hearsay, it is nonetheless admissible to show the declarant's state of mind, bias, or motive as a witness. Just as it is permissible, in my view, to allow evidence showing a declarant's state of mind, or his ability to recount the details of a given event by reference to prior extrajudicial assertions or conduct, *(Bridges v*

*State, supra; People v Willie Solomon, supra)*[1] so, too, should it be permissible to show a declarant has so little regard for his civic duty to testify in a court of law that $20 will secure his absence.[2]

The only claim of error which I find legally tenable is the lack of a foundation for the admission of the rebuttal testimony. When a witness is sought to be impeached with prior contradictions, we impose the requirement of preliminary questions to that witness as a foundation. *Scholnick v Bloomfield Hills,* 350 Mich 187, 195; 86 NW2d 324, 328 (1957); *In re Barth's Estate,* 298 Mich 388, 415; 299 NW 118, 128 (1941). The purpose of that requirement is to allow the witness the opportunity of denying or explaining away the supposed self-contradictory statement. See, generally, 3A Wigmore on Evidence (Chadbourn Rev), § 1025, p 1020. In the context of prior self-contradiction, the foundation requirement has been strictly enforced. See *Ebel v Saginaw Road Commissioners,* 386 Mich 598, 608; 194 NW2d 365, 369 (1972). On principle, the same requirement should apply to impeachment by prior utterances of bias or corruption; however, in that context the rule is not uniformly applied. 3A Wigmore on Evidence (Chadbourn Rev), § 953, p 801.

I think it is basic that a jury be informed of both

---

[1] With regret, I must mention the separate opinion of Mr. Justice BRENNAN in *People v Hallaway,* 389 Mich 265, 271; 205 NW2d 451, 452 (1973), to the effect that prior consistent statements of one witness offered to rebut the innuendo of recent fabrication are hearsay when offered by another witness. I do not embrace that ruling wholeheartedly.

[2] The list of case authority in this opinion is not meant to be exhaustive. For those in the profession who find comfort in the possession of a citation to a case "on all fours", I hereby supply *State v Wilson, 163 La 29; 111 So 484 (1927),* where the corruption of a prosecution witness, shown by his offer of a bribe in a prior conversation with the defendant, was held admissible with little or no foundation being laid.

sides of the assertion of bias or corruption on the part of a witness in order that a reasoned judgment of credibility be made. I find no reason in the record why the witness sought to be impeached could not have been recalled to the stand to explain, deny, or admit the statement attributed to him. That being the case, I concur in the remand for new trial.