PEOPLE v GUNNE

OPINION OF THE COURT

1. WITNESSES—IMPEACHMENT—PRIOR INCONSISTENT STATEMENTS—
   LAYING OF FOUNDATION.

   A foundation must be laid by asking a witness preliminary
   questions in order to impeach the witness by showing a prior
   inconsistent statement.

2. WITNESSES—CRIMINAL LAW—IMPEACHMENT—PRIOR INCONSISTENT
   STATEMENTS—LAYING OF FOUNDATION—SELF-INCRIMINATION.

   Admission of a tape recording into the record as an attack on a
   defense witness's credibility through proof of prior inconsistent
   statements was reversible error where, after the prosecutor
   admitted that the proposed foundation questions could be in-
   criminating to the witness, the trial court held that the tape
   recording could be admitted without any foundation testimony
   for the impeachment of the witness.

3. WITNESSES—CRIMINAL LAW—IMPEACHMENT—PRIOR INCONSISTENT
   STATEMENTS—HARMLESS ERROR.

   Erroneous admission of a tape recording into evidence as a prior
   inconsistent statement of a defense witness was not harmless
   error beyond a reasonable doubt where the witness was the
   only person to corroborate a good deal of the defendant's own
   testimony, and the witness's testimony had an obviously impor-
   tant bearing on the defense.

4. WITNESSES—CRIMINAL LAW—PRIOR INCONSISTENT STATEMENTS—
   LAYING OF FOUNDATION—SELF-INCRIMINATION.

   Prior inconsistent statements of a witness cannot be shown where
   it is impossible to lay a foundation properly because the wit-
   ness exercises the Fifth Amendment privilege against self-in-
   crimination in response to foundational questions put by the
   prosecutor (US Const, Am V).

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 58 Am Jur, Witnesses § 685 et seq.
   21 Am Jur 2d, Criminal Law § 118.

DISSENT BY M. J. KELLY, J.

5. WITNESSES—CRIMINAL LAW—IMPEACHMENT—PRIOR INCONSISTENT
STATEMENTS—LAYING OF FOUNDATION—SELF-INCRIMINATION.
*The foundation is laid for the admission of impeachment of a
defense witness by prior inconsistent statements when the
prosecutor asks the foundational questions; the witness cannot
nullify that foundation by refusing to answer on the grounds
that the questions might be self-incriminating.*

Appeal from Recorder's Court of Detroit,
Thomas L. Poindexter, J. Submitted June 18, 1975,
at Detroit. (Docket No. 19135.) Decided October 27,
1975. Leave to appeal applied for.

Dr. Hugh R. Gunne was convicted of conspiracy
to commit first-degree murder and assault with
intent to commit murder. Defendant appeals. Re-
versed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Patricia J. Boyle,* Principal
Attorney, Research, Training and Appeals, and
*Michael R. Mueller,* Assistant Prosecuting Attor-
ney, for the people.

*Ivan E. Barris,* for defendant.

Before: T. M. BURNS, P. J., and QUINN and M. J.
KELLY, JJ.

T. M. BURNS, P. J. On January 2, 1974, defend-
ant Dr. Hugh R. Gunne,[1] was convicted by a jury
of conspiracy to commit first-degree murder[2] and

---

[1] Defendant was tried jointly with Stanley Kulczyski. Another
alleged co-conspirator was not tried since his whereabouts were
unknown.

[2] MCLA 750.157a; MSA 28.354(1).

assault with intent to commit murder.[3] On January 16, 1974, defendant was sentenced to life imprisonment on the charge of conspiracy to commit murder and 25 to 50 years imprisonment on the charge of assault with intent to kill and murder. On that same date the trial court denied defendant's motion for a new trial. This appeal followed.

The chief witness for the prosecution was Barbara Kimmel, the alleged victim of the charged crimes. After the jury had been excused, defense counsel sought to question Mrs. Kimmel about an outstanding capias warrant against her for failure to appear at a trial relating to a charge lodged against her in Washtenaw County. The trial court sustained the prosecutor's objection on the ground that the question was an inquiry into a charge rather than a conviction and was thus impermissible.

Defendant's attorney also questioned Mrs. Kimmel regarding certain criminal convictions. She admitted two convictions concerning occupying a hotel room with a male other than her husband but denied the existence of a third conviction concerning loitering at a place of illegal business. When defense counsel attempted to introduce extrinsic evidence of the loitering conviction, the trial court sustained the prosecutor's objection on the ground that the 1968 conviction was had without benefit of counsel. There was also some discussion as to whether a conviction for violating an ordinance as opposed to a statute is a crime.

The defense called Barbara Bowman, a nurse who worked for the defendant, as an alibi witness. On cross-examination, the prosecutor attempted to introduce a tape recorded telephone conversation

---

[3] MCLA 750.83; MSA 28.278.

between the witness and a third party to show similar or prior acts in an effort to establish the motive of the defendant.[4] After the trial court held that the tape could not be admitted for such purpose, the prosecutor offered to introduce the tape as a prior inconsistent statement of the witness Bowman contradicting her testimony on direct examination. It soon became apparent that the witness would exercise her Fifth Amendment privilege in response to any foundational questions necessary for the admission of the tape recording. Defense counsel then moved to strike the testimony of Bowman since cross-examination would not be available. The trial court denied the motion. When the prosecutor conceded that the foundation question might be incriminating, the trial court ruled that the introduction of the tape was permissible without the necessity of laying a foundation.

There are several assignments of error. We have considered them all. Although we specifically speak to only one issue, the others have not been disregarded. Rather we consider them to have raised issues of insufficient substance to merit decisional discussion. As to each we have found no deviation from sound and accepted trial procedure or established case law. The singular issue which we consider to be decisional, and indeed to mandate reversal, is whether the trial court erred reversibly when it admitted the tape recording of a prior inconsistent statement made by defense witness Barbara Bowman in order to impeach her direct testimony.

Defendant contends that the tape recording was

---

[4] We note that the tape recording in question was made with the consent of the third party who subsequently turned the tapes over to the Dearborn Police Department. No warrant was ever issued for their making.

inadmissible because the prosecutor had not laid the requisite foundation for impeachment of a witness by a prior inconsistent statement. As mentioned earlier, after the prosecutor admitted that the proposed foundation questions could be incriminating, the trial court held that the tape could be admitted without any foundation testimony. This was reversible error.

It has long been held in Michigan that in order to impeach a witness by showing a prior inconsistent statement of that witness a foundation must be laid by asking the witness preliminary questions. *People v George Jones,* 48 Mich App 102; 210 NW2d 145 (1973), *Ebel v Saginaw County Board of Road Commissioners,* 386 Mich 598, 608; 194 NW2d 365, 369 (1972), *Scholnick v Bloomfield Hills,* 350 Mich 187, 195; 86 NW2d 324, 328 (1957), *Rodgers v Blandon,* 294 Mich 699; 294 NW 71 (1940). This foundation requirement has been strictly enforced. See *People v Jones, supra,* concurring opinion of Judge GILLIS at 111, *Ebel v Saginaw Road Commissioners, supra, Rodgers v Blandon, supra.* No foundation was laid for the impeachment of Barbara Bowman by proof of prior inconsistent statements, and therefore, the admission of the tape recording into the record as an attack on Bowman's credibility was erroneous. *People v Jones, supra, Ebel v Saginaw Road Commissioners, supra,* 98 CJS, Witnesses, § 480, pp 362–364. Since Barbara Bowman was the only person to corroborate a good deal of defendant's own testimony, her testimony had an obviously important bearing on the defense and, therefore, we cannot say that the admission of the tape into evidence was harmless error beyond a reasonable doubt. *People v Jones, supra, People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972). We hold

that where, as here, a witness has exercised her Fifth Amendment privilege against self-incrimination in response to foundational questions put by the prosecutor, it is impossible to lay a foundation properly and therefore prior inconsistent statements cannot be shown. *Cf. Ebel v Saginaw Road Commissioners, supra.*

Reversed and remanded for a new trial.

QUINN, J., concurred.

M. J. KELLY, J. *(dissenting).* This case presents a question which apparently has not been considered before by the appellate courts of this state. The question is whether prior inconsistent statements may be introduced into evidence for purposes of impeachment when the witness sought to be impeached asserts her Fifth Amendment rights in response to foundational questions. In other words, can a witness prevent the laying of a foundation for the admission of impeaching statements by exercising her privilege against self-incrimination? After surveying the authorities I must conclude that, in such a case, the foundation is laid when the prosecutor asks the foundational questions, and the witness cannot nullify that foundation by refusing to answer on the grounds that she might incriminate herself.

In *State v Haworth,* 24 Utah 398; 68 P 155 (1902), the Supreme Court of Utah considered a problem very similar to the one at bar. There, as here, the witness was called by the defense and gave favorable testimony on direct examination. There the defendant was charged with first-degree murder and offered as an alibi witness one Reavis. On cross-examination, the prosecution sought to lay the foundation for impeachment by questioning Reavis about a conversation he had with a Mr.

Grant. Reavis declined to answer on the grounds that his answer might tend to incriminate him. Afterwards Mr. Grant was placed on the witness stand by the state, and questioned about the conversation. Defense counsel objected on the grounds that Reavis had a right not to answer and thus the foundation had not been laid. The objection was overruled. The Supreme Court of Utah affirmed, explaining that the purpose of the rule is to give the witness an opportunity to respond:

"The reason of *[sic]* the rule which prohibits a witness from being impeached by proof of his contradictory statements until, on cross-examination, he shall have first been interrogated in respect to the circumstances, and as to when, where, and to whom the statements were made, is aptly stated in 1 Greenleaf, Evidence (15th ed) § 462, as follows: 'This course of proceeding is considered indispensable, from a sense of justice to the witness; for, as the direct tendency of the evidence is to impeach his veracity, common justice requires that, by first calling his attention to the subject, he should have an opportunity to recollect the facts, and, if necessary, to correct the statement already given, as well as by a redirect examination to explain the nature, circumstances, meaning, and design of what he is proved elsewhere to have said.' When the foundation for the impeachment is so laid, the reason of the rule is fully met; and it follows that unless the witness, on his cross-examination, admits the imputed statements, and they do not relate to a collateral and immaterial matter, the adverse party then has the right to prove the contradictory statements, and the witness cannot defeat that right by refusing to answer on the ground that he would thereby criminate himself, or by answering that he has no recollection of having made the statements imputed to him. This position is sustained not only on principle, but by the weight of both the American and English authorities. [Citations omitted.]" 68 P at 163.

According to Wigmore, the rule requiring that a foundation be laid for impeachment by prior in-

consistent statement had its genesis in *The Queen's Case,* 129 Eng Rep 976 (1820). See IIIA Wigmore, Evidence (Chadbourne Rev), § 1026, p 1021.

The opinion of Chief Justice Abbott in that historic case discusses the very problem with which we are faced in the case at bar. The relevant portion of *The Queen's Case, supra,* was quoted with approval in *State v Haworth, supra,* 68 P at 163:

"' * * * If it be intended to bring the credit of a witness into question by proof of anything that he may have said or declared touching the cause, the witness is first asked upon cross-examination whether or no he has said or declared that which is intended to be proved. * * * If the witness declines to give any answer to the question proposed to him, by reason of the tendency thereof to criminate himself, and the court is of opinion that he cannot be compelled to answer, *the adverse party has, in this instance, also, his subsequent opportunity of tendering proof of the matter,* which is received, if by law it ought to be received. But the possibility that the witness may decline to answer the question affords no sufficient reason for not giving him an opportunity of answering, and of offering such explanatory or exculpatory matter as I have before alluded to.' " (Emphasis added.)

In the case at bar, the trial court ruled that the introduction of the tape recording which constituted the impeaching conversation was permissible without the necessity of laying a foundation. Nevertheless, the prosecutor went on to ask the foundational questions. Thus the witness was given an opportunity to answer, and that is all that is required. The foundation was laid when the prosecutor asked the question; the failure of the witness to answer did not render the prior inconsistent statement inadmissible.

I would affirm.