WILLET *v.* MICHIGAN CENTRAL RAILROAD CO.

1. DECLARATION FOR PERSONAL INJURIES — ALLEGATION OF DUE CARE — AMENDMENTS.

In an action against a railroad company for injuries received at a crossing, it was error to refuse to permit an amendment to the declaration, which alleged that plaintiff, as she approached the crossing, drove "at a very slow rate of speed," and looked and listened for trains, so as to meet the proof that she stopped her horse, stood up in the carriage, and looked and listened before attempting to cross the track.

2. RAILROAD CROSSINGS — ACCIDENT TO TRAVELER ON HIGHWAY— PARTIALLY OBSTRUCTED VIEW—CONTRIBUTORY NEGLIGENCE.

Plaintiff, accompanied by another woman, was driving upon the highway in a populous portion of a city. When they were 15 or 20 rods from a railroad crossing, they looked for a train, and neither saw nor heard one. They drove slowly towards the track, continuing to look and listen as they approached. Just before driving upon the track, they stopped the horse, stood up in the buggy, and looked and listened for trains. The view was obstructed by freight cars standing upon a side track, but same of the cars were low enough so that a small portion of the smokestack of an engine approaching on the main track would be visible from the place where plaintiff stopped her horse. Plaintiff drove upon the track, was struck by a train, and injured. *Held,* that it could not be said, as a matter of law, that she was negligent in failing to see the train.

3. SAME—NEGLIGENCE OF COMPANY—QUESTION FOR JURY.

The question of the negligence of the railroad company in failing to provide some method for giving notice of approaching trains, in view of the presence of its freight cars upon the siding, should have been submitted to the jury.

Error to Shiawassee; Smith, J.   Submitted June 11, 1897.   Decided September 23 1897

Case by Agnes Willet against the Michigan Central Railroad Company for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*F. F. Bumps* and *S. S. Miner*, for appellant.

*M. V. & R. A. Montgomery*, for appellee.

Moore, J. The plaintiff sued defendant to recover for injuries received by her at the Chipman-street crossing in Owosso, Mich. The circuit judge directed a verdict in favor of the defendant. Plaintiff appeals.

The declaration averred, among other things, as follows:

"And plaintiff avers that on the 18th day of April, A. D. 1895, in the city of Owosso, aforesaid, said plaintiff, in company with Mary Otto, with a gentle horse and single buggy, was riding along in a careful and prudent manner, coming from the south, and going north, on said public highway, intending to pass over said railroad track, going to the business part of the city of Owosso; that when thus approaching said track in a careful and prudent manner, looking and listening for a train on said railroad tracks, and going at a very slow rate of speed, so as to avoid any danger, and without any negligence on her part, or upon the part of her companion, said Mary Otto, and when nearly upon said railroad tracks, the defendant's said engine, coaches, and cars, propelled by steam, aforesaid, approached said public highway, coming from the southwest, and going northeast, on said railroad track at an unusual and very great rate of speed, to wit, 25 miles per hour, and came upon and over said crossing and public highway without having given, or caused to be given, any warning of approach of said engine, coaches, and cars, and without any flagman or other servant there stationed to warn people walking, passing, or riding along said public highway over said crossing of the approach of said engine, coaches, and cars, and without blowing the whistle on said locomotive engine, as required by law, and which was then and there placed upon said locomotive engine, which was then and there propelling the said coaches and cars, and without having

any careful and prudent method or means of notifying the said plaintiff or the public of the approach of said engine, coaches, and cars, and having a large number of box cars and flat cars loaded with lumber, to wit, 30 cars, upon the said side track, and upon said highway, as aforesaid, and rising above said highway, to wit, six feet, thus obstructing the view and hearing of the public and of said plaintiff and of said Mary Otto, so that they, or either of them, could neither see nor hear an approaching train from the southwest upon said railroad.

"And the said defendant then and there, by its servants in charge of this said engine, cars, and coaches, so carelessly, negligently, and improperly managed, moved, and conducted the same that by and through the carelessness, negligence, and improper conduct of the said defendant, by its servants in their behalf, said engine of the said defendant, as said horse hitched to a single buggy, in which were riding the said plaintiff and said Mary Otto, arrived at and upon said railroad track, then and there ran into and struck with great force and violence upon and against the buggy in which said plaintiff was riding, and which was passing over said railroad, thereby throwing said plaintiff and said Mary Otto, who were in said buggy, violently to the earth, greatly injuring said plaintiff in and about her person, in her nervous system, and in her mind, in this, to wit: * * * And the said Agnes Willet, at the time of the said accident, and before, did not know that the said train from the southwest was approaching said public highway on said railroad, and had no reason to anticipate the same, and did not and could not see nor hear the same, on account of said defendant not giving proper signals, and running its train at so rapid a rate of speed, contrary to the ordinance of the city of Owosso, and on account of said defendant leaving box cars and flat cars loaded high with lumber on its said side track and on said public highway, in the manner as aforesaid, and on account of said highway immediately south of said railroad not having been restored by said defendant to its former state, as near as might be, as is required by the statute of the State of Michigan. And said plaintiff avers she herself, and her companion, said Mary Otto, were entirely free from any negligence in respect to said accident and to said injuries sustained."

Upon the trial testimony was offered to show that, as plaintiff approached the railroad, and within a short dis-

tance of it, she stopped her horse, stood up in the carriage, and looked and listened before proceeding across the track, which testimony was objected to, as follows:

"*Mr. Montgomery:* I object to it. I object to all the proof in this case, for the reason that no negligence has been averred in this declaration against the company. The declaration recites that these people approached the train, driving along at a slow gait. There is no hint that they did anything else than to drive at a slow gait. I object that, while it may not have been the duty of the plaintiff to aver that they stopped and listened, they have no right to aver an entirely different thing, then seek to prove that they did stop and listen."

The testimony was received. A large number of witnesses were sworn. The testimony on the part of the plaintiff and her witnesses showed that plaintiff lived 11 miles from Owosso, and was not familiar with the Chipman-street crossing, though she had passed over it once or twice. This crossing is in a populous portion of Owosso, upon a street that accommodates a good many travelers. The plaintiff came to Owosso in a covered carriage, having a neighbor, Mrs. Otto, with her. They took dinner with a daughter of Mrs. Otto, who lived 15 or 20 rods south of the railroad track. The testimony discloses that, before they got into the carriage, they looked for a train, and neither saw nor heard one. The horse was 9 years old, and gentle, and was driven slowly. The top of the carriage was up. The ladies continued to look and listen as they approached the crossing. At this crossing there was a main track and siding. The siding was nearest the ladies, and was filled on both sides of the street with freight cars, except an opening in the street, variously stated by the witnesses to be from 10 to 18 feet wide. This siding was several feet higher than the highway. The freight cars were cars filled with lumber, ordinary box cars, and hay and furniture cars, and were so high and continuous that a train passing on the other side could not be seen, though a small portion of the smokestack could be seen above the ordinary box cars and lum-

ber cars, but not above the hay and furniture cars. Just before getting to the track, Mrs. Willet stopped the horse. Mrs. Otto listened, and looked through the cracks in the curtains, while Mrs. Willet stood up in the carriage, and looked both ways and listened. Seeing nothing and hearing nothing, the ladies passed on, and a moment later were struck by the locomotive, and received injuries for which Mrs. Willet sued.

There was testimony offered on the part of the plaintiff that the train was running very fast, and that no whistle was blown within 40 rods of the crossing, and no bell rung, and that the wind was blowing from the direction of the ladies towards the train. The testimony of the employés of the railroad company was that the whistle for the crossing was blown and the bell rung. The testimony of the engineer was that he gave all the signals, and was not running very rapidly. On the cross-examination, he stated that, when he first saw the horse, it was coming off the side track onto the main track, and that he could not see into the highway off the company's right of way because of the cars upon the side track.

Plaintiff's counsel asked leave to amend the declaration, "to show that, before plaintiff reached the crossing, she stopped; and so it may show that, by reason of defendant's placing freight cars on the side track, and that by reason of running their train at so high a rate of speed, to wit, 25 miles an hour, and by reason of their not placing any flagman or watchman at the crossing, plaintiff was injured."

The record does not show that any objection was made to this amendment, except by the trial judge, who said: "I do not think an amendment in that respect would help the matter," and declined to allow the amendment. He then directed a verdict in favor of the defendant, saying: "I base my instructions in relation to this case, as to what your verdict shall be, upon the condition of the pleadings in the case."

We are not prepared to say that the declaration, as it

had not been demurred to, was not sufficient. Nor are we prepared to say that there was a variance between the declaration and the proofs that would prove fatal. To avoid any questions of this character, however, the plaintiff's counsel sought to amend the declaration, not by stating a new or different cause of action, but by stating it more fully. We think the amendment should have been allowed. 2 How. Stat. § 7631; *Brassel* v. *Railway Co.*, 101 Mich. 5; *Edwards* v. *Village of Three Rivers*, 102 Mich. 153; *Ross* v. *Township of Ionia*, 104 Mich. 320.

We think, too, that the question should have been submitted to the jury whether or not the defendant was guilty of negligence in not providing some method for giving notice of the approach of the train at this crossing, in a populous portion of the city, when it was temporarily, for purposes of its own, so obstructed by the company that the view of persons having the right to use the highway was so cut off that it was difficult to determine whether a train was approaching or not. *Guggenheim* v. *Railway Co.*, 66 Mich. 150; *Freeman* v. *Railway Co.*, 74 Mich. 86; *Grand Trunk R. Co.* v. *Ives*, 144 U. S. 408.

The question whether plaintiff was guilty of contributory negligence, under the testimony in this case, was a question of fact, to be submitted to the jury, and not a question of law, to be determined by the court. *Teipel* v. *Hilsendegen*, 44 Mich. 461; *Guggenheim* v. *Railway Co.*, 66 Mich. 150; *Mynning* v. *Railroad Co.*, 59 Mich. 257; *Underhill* v. *Railway Co.*, 81 Mich. 43.

Judgment is reversed, and new trial ordered.

Long, C. J., and Montgomery, J., concurred with Moore, J. Grant, J., concurred in the result. Hooker, J., did not sit.