BALDINGER *v.* ANN ARBOR RAILROAD COMPANY.

1. RAILROADS—UNUSUALLY DANGEROUS GRADE CROSSINGS—LOCAL WARNINGS.

A railroad company is required, in order to exercise due care, to meet the peril of an unusually dangerous grade crossing with unusual precautions by way of local warnings, whether such precautions are or are not required by statutory law or safety regulation, particularly where the dangerous condition results from obstructions to view which actually prevent the highway traveler from seeing an approaching train until he is dangerously close to the track.

2. SAME—NEGLIGENCE—GRADE CROSSING—FLAGMAN.

The absence of a flagman at a railroad grade crossing, under certain circumstances, may be evidence of negligence on the part of the railroad company, although ordinarily his absence would not be negligence.

3. EVIDENCE—MEASUREMENT OF DISTANCE.

Measurements control as a matter of law over estimates measurable as to distance.

4. RAILROADS—NEGLIGENCE—GRADE CROSSING—FLAGMAN.

Defendant railroad company, as a matter of law, was not guilty of negligence in failing to provide flagman at a typical open country single track rail crossing of a secondary road, where the highway approach was substantially level and at least the upper half of the train was visible for 1,000 or more approach-feet of straight track even though there was rainy weather at noon on July 1st.

5. NEGLIGENCE—QUESTION OF LAW.

The question of negligence is one of law for the court where the facts are such that all reasonable men will be likely to draw from them the same inferences.

REFERENCES FOR POINTS IN HEADNOTES

[1] 44 Am Jur, Railroads §§ 505, 507.
[2, 4] 44 Am Jur, Railroads § 524.
[5] 38 Am Jur, Negligence § 344.

Appeal from Wexford; Peterson (William R.), J. Submitted February 5, 1964. (Calendar No. 41, Docket No. 50,136.) Decided May 4, 1964.

Case by the estate of Mildred Baldinger, deceased, by Floyd Baldinger, administrator, against the Ann Arbor Railroad Company, a Michigan corporation, for damages arising from death in a collision of an automobile and train. Judgment for defendant. Plaintiff appeals. Affirmed.

*Peter F. Cicinelli, Eugene D. Mossner,* and *Nuel N. Donley,* for plaintiff.

*Bodman, Longley, Bogle, Armstrong & Dahling* (*Frederick C. Nash* and *Charles F. Hosmer,* of counsel), for defendant.

BLACK, J. The plaintiff husband sued under the statute[1] for wrongful death of his wife, Mildred Baldinger. Mrs. Baldinger's death resulted from a collision at grade of defendant's train with an automobile occupied by her. Verdict and judgment for defendant. On appeal the decisive question is brief-stated by plaintiff's counsel:

"Did the trial court err in eliminating from jury consideration plaintiff's theory that the railroad crossing at which the automobile-train collision occurred was an 'extra hazardous crossing', requiring additional safeguards and precautions on the part of the defendant railroad?"

To introduce the facts and our decision to affirm, we consider representative examples of the rule to which counsel allude. The rule is, in general, that if a crossing at grade is shown to be "unusually dangerous," ordinary care requires that the railroad

[1] CL 1948, § 691.581 *et seq.* (Stat Ann 1959 Cum Supp § 27.711 *et seq.*).—REPORTER.

meet the peril with unusual precautions, whether such precautions are or are not required by statutory law or safety regulation, particularly where the dangerous condition results from obstructions to view which actually prevent the highway traveler from seeing an approaching train until he is dangerously close to the track. Such unusual precautions are sometimes known as "local warnings." For extended discussion and citation, see 44 Am Jur Railroads, §§ 507, 514, pp 747, 748, 757, 758.

In our reports the first reference to such rule appears in the early and exhaustively considered grade-crossing case of *Lake Shore & M. S. R. Co.* v. *Miller,* 25 Mich 274. The reference is part of an extended footnote. The applicable portion reads (2d ed, annotated, p 274 [page number at bottom 290]):

"It is not, however, enough in all cases, that the statutory signals have been given to absolve the railroad company from the charge of negligence. Other precautions may be required under some circumstances, and there may be negligence that will charge the company, besides the omission to sound the whistle or ring the bell: [citing cases, all dehors Michigan]."

The next occasion for consideration of the rule seems to have arrived with submission to the Court of *Staal* v. *Grand Rapids & Ind. R. Co.,* 57 Mich 239. Through Justice CAMPBELL the Court said (p 243):

"The principal grievance, however, was, as claimed, the absence of any local warning. The duty of having gates or flagmen at a street crossing is not imposed absolutely at all city street crossings. But it cannot be held that circumstances may not impose a duty to do this or something which will be of service to passers-by. Under the charter of Grand Rapids it appears that the common council passed resolutions requiring the marshal to notify

the proper officers of railroads to station flagmen at street crossings, and that this notice reached the defendant. The court below did not recognize this as imposing any legal duty, and we need not now consider how far it did so. But the jury were told that while there was no absolute duty laid on them by law, it was for them to decide whether ordinary care and prudence required some such precaution under the circumstances. In this we think there was no error."

Justice CAMPBELL then turned to the ever-important facts and, from those facts, concluded that "the jury had enough before them to warrant them in considering these surroundings so dangerous as to call for some efficient local warning to passers-by."

Here are further exemplary passages with included citations:

"We think, too, that the question should have been submitted to the jury whether or not the defendant was guilty of negligence in not providing some method for giving notice of the approach of the train at this crossing, in a populous portion of the city, when it was temporarily, for purposes of its own, so obstructed by the company that the view of persons having the right to use the highway was so cut off that it was difficult to determine whether a train was approaching or not. *Guggenheim* v. *Lake Shore & M. S. R. Co.*, 66 Mich 150; *Freeman* v. *Duluth, S. S. & A. R. Co.*, 74 Mich 86 (3 LRA 594); *Grand Trunk R. Co.* v. *Ives*, 144 US 408 (12 S Ct 679, 36 L ed 485)." (*Willet* v. *Michigan Central R. Co.*, 114 Mich 411, 416.)

"It is not ordinarily negligence to neglect to have a flagman at a crossing in the absence of an order from the commissioner of railroads, and yet circumstances of the particular case may be such that the absence of a flagman may be evidence of negligence. See *Freeman* v. *Duluth S. S. & A. R. Co.*,

74 Mich 86 (3 LRA 594); *Willet* v. *Michigan Central R. Co.,* 114 Mich 411; *Grenell* v. *Michigan Central R. Co.,* 124 Mich 141; *Grand Trunk R. Co.* v. *Ives,* 144 US 408 (12 S Ct 679, 36 L ed 485); 2 Thompson on Negligence, § 1535.    And so of the absence of a flagman or lookout at the rear of a car being backed across a way.    *Green* v. *Chicago & W. M. R. Co.,* 110 Mich 648 (12 Am Neg Cas 128); *Schindler* v. *Milwaukee, L. S. & W. R. Co.,* 87 Mich 400; 2 Thompson on Negligence, §§ 1571 and 1594." (*Barnum* v. *Grand Trunk W. R. Co.,* 148 Mich 370, 373.)

Since the *Ives Case,* cited in *Willet* and *Barnum* above, arose in Michigan and was governed by Michigan's pertinent view of grade-crossing law, it may be well to consider what on that occasion was said of Grand Trunk's contention that its duty to street and highway travelers was prescribed exclusively by statutory regulations (p 422 of report).    Having stated the contention, along with Michigan citations proffered by the railroad, the supreme court asked and answered a rhetorical question:    "But do the Michigan cases cited sustain the defendant's contention?    We think not; but rather that they support the rule laid down by the court below in the charge excepted to."    Here is Justice Lamar's conclusion, for the court (p 427 of report):

"The underlying principle in all cases of this kind which requires a railroad company not only to comply with all statutory requirements in the matter of signals, flagmen and other warnings of danger at public crossings, but many times to do much more than is required by positive enactment, is, that neither the legislature nor railroad commissioners can arbitrarily determine in advance what shall constitute ordinary care or reasonable prudence in a railroad company, at a crossing, in every particular case which may afterwards arise."

See, also, *McParlan* v. *Grand Trunk W. R. Co.*, 273 Mich 527, 533 and *Emery* v. *C. & O. R. Co.*, 372 Mich 663.

The foregoing presentation of rule is as fair to plaintiff as he may reasonably request. Now we must ascertain whether, on due favorable view, the proof entitled plaintiff to an instruction authorizing jury determination of the posed question, that is, whether the circumstances were of such nature as to call for "some efficient local warning," over and above statutory requirements and the requirements of safety regulations promulgated by the public service commission.

The rail crossing was in open level country. The car occupied by plaintiff's decedent, driven by a Mrs. Gould, approached the crossing from the north, on a north-south country road constructed of dirt and gravel. Its speed of approach was "very slow," not "over 10 miles per hour." The defendant's 43-car freight train approached from the east northeast at a speed of 37 to 45 miles per hour. The railroad was not double tracked and there were no spurs or side-tracks in the area. Also there were no parked box-cars, trackside buildings, or other like obstructions of view common to the situations considered in the foregoing line of authorities.

The collision occurred about noon on July 1, 1958. Sumac and other like trackside growth, upon and about the "mound" or "embankment" we consider, was in bloom. "It had been a dark, overcast, stormy morning, according to the witnesses, including members of the train crew, and it was still raining heavily when the 2 ladies left."[2] The "mound" or "embankment," which according to plaintiff's counsel completely obstructed the view to the east northeast of a southbound motorist, was "approximately 8 or

---

[2] This and subsequent factual quotations are taken from the appellant's brief-statement.

9 feet high from the road level, was approximately 10 to 20 feet wide at the bottom and 3 to 10 feet wide at the top." "It extended along the railroad right-of-way for about 150 to 300 feet." According to some of plaintiff's witnesses, it "came within 7 or 10 feet of 7 Mile Road and within 6 to 10 feet of the defendant's track." The footages were, of course, estimates of the witnesses and were not measured by them. One such estimate, that the "mound" or "embankment" extended along the right-of-way "about 150 to 300 feet," was disputed by a defense witness. He said without dispute that he had actually measured the distance and found it to be 75 feet.[3] The photographic exhibits disclose no serious obstruction of view, from the roadway north of the track to the east northeast. They, however, were taken in the winter and may on that account fail to disclose the exact situation at foliage time of the sumac growth. One of them, exhibit G, appears at the margin.

Exhibit G portrays the direction of approach of the train, the camera having been faced straight up the track to the east northeast, and portrays also in the left center the "mound" or "embankment" to which reference has been made. The Gould car approached the crossing from the left side of the exhibit.

Upon such favorably assembled presentation plaintiff claims that the combination of bad weather and the described obstruction of view presented, for

---

[3] Measurements control, of course, as a matter of law over estimates measurable as to distance. See *Brown* v. *Detroit United Railway,* 216 Mich 582, 585, quoting *Perkins* v. *Township of Delaware,* 113 Mich 377, 379, as follows:

"The practice of permitting juries to base their verdicts upon the guesses or estimates of distances or conditions which are susceptible of actual measurement is to be condemned. It is the duty of the plaintiff who seeks to recover damages for negligence to place before the jury the actual conditions when it is within his power to do so."

jury consideration, question whether the railroad should, under the aforesaid "dangerous crossing" rule, have posted "a flagman or a watchman at the crossing on this day," or should have stopped the train to "send a flagman on ahead to warn traffic before crossing this unusually dangerous crossing." To this we are constrained to reply that no respectable authority has been cited holding that, at a typical open country single track rail crossing of a secondary road, where there is a partial obstruction of view of a train approaching from given direction on a straight track, the highway approach being at the same or substantially same level as that of the track and the upper half of the train being day-time visible for a thousand and more of the approach-feet thereof, such circumstances permit submission to the jury of what we may rightly call the "dangerous crossing" rule. Such an authority would, as noted by Justice CHRISTIANCY in the *Miller Case* (*supra* at 280), "effectually put an end to all railroads, as a means of speedy travel or transportation."

In this case, the automobile having approached from the starboard bow of the train, the engineer observed it well in advance of any indicated emergency. He said, with no reason assigned for doubt of his word, that he kept his "eye on the automobile, and I had the horn open, and when the car got to a point where I thought it should stop, as I have seen countless thousands do, I seen that they didn't make an effort to stop, and then I went for the brakes." Thus the only conclusion reasonable men can reach upon this record is that, probably on account of reduced visibility and hearing caused by driving rain and thoughtless inattention, Mrs. Gould drove slowly toward and onto the track without hearing the warning signals of the train and

without perceiving its approach until too late to avoid calamity. Such conclusion is insufficient as a matter of law to hold the railroad to any duty, as at common law, of precaution over and above such as are prescribed by statute and regulations of the public service commission. This is not to say, of course, that a case of necessity for "local warning" cannot be made where the locale is in the country distinguished from the distractions and obstructions which on occasion attend city rail crossings. It is to say that this plaintiff's proofs are insufficient in such regard.

As our decisions have made doubly clear in recent years, the question of actionable negligence by the common law is usually a question of fact (see discussion and quotation in *Kaminski* v. *Grand Trunk W. R. Co.*, 347 Mich 417, 419–421). We do not by present writing depart from that precept. We do instead adhere to it and the necessary counterpart thereof. Such counterpart appears in 3 Cooley on Torts (4th ed), § 481, p 391, also in the *Miller Case, supra* at 293, 294. The latter is quoted:

"It is frequently difficult, perhaps sometimes impossible, to determine how far the question of negligence or reasonable diligence is a question of law, and how far a question of fact. It is generally a question of mixed law and fact; and always, when the facts are found or omitted, if they be such that all reasonable men will be likely to draw from them the same inferences, it is a question of law for the court. But I know of no case in which it can be said with accuracy to be *exclusively a question of fact* for the jury; some principle of law will always be applicable to the particular state of facts, and may be laid down by the court; the principle may sometimes be very general and abstract, but there is still a legal principle involved." (Italics by Justice CHRISTIANCY.)

No other question requires discussion.   Judgment affirmed.   Costs to defendant.

KAVANAGH, C. J., and DETHMERS, KELLY, SOURIS, SMITH, O'HARA, and ADAMS, JJ., concurred.