EBEL *v* SAGINAW COUNTY BOARD OF
ROAD COMMISSIONERS

OPINION OF THE COURT

1. RAILROADS—CROSSINGS—WARNINGS—NEGLIGENCE—INSTRUCTIONS.

   Instruction to the jury, "that if you believe from the evidence that this [railroad] crossing, because of the existence of the center of the road crossing signal, pedestal, stanchion or barrier at the time of the accident, was unusually dangerous to travelers on [a highway], and that fact was known to the defendants [railroads] or by the exercise of ordinary care should have been known by them, then it was the duty of the defendants, their clerks, servants and agents to use such other means to prevent injury to travelers at said crossing as permitted by law", was not adequate or accurate, because the test is not whether the conditions were *unusually* dangerous, but whether what was done met the test of an ordinarily prudent man under the same or similar circumstances.

2. RAILROADS — NEGLIGENCE — WARNINGS — DUTY — SAFETY REGULATIONS.

   A railroad's duty of care may require it to provide warnings over and above those required by statutory law or safety regulations; the test is not whether the conditions were *unusually* dangerous, but whether what was done under the circumstances met the test of an ordinarily prudent man under the same or similar circumstances.

REFERENCES FOR POINTS IN HEADNOTES

[1] 44 Am Jur, Railroads § 506 *et seq.*
[2–4, 12] 44 Am Jur, Railroads § 514.
[3] 58 Am Jur 2d, Nuisances § 1.
[5] 58 Am Jur 2d, Nuisances § 1.
[6, 7] 58 Am Jur 2d, Nuisances § 228.
[8] 58 Am Jur 2d, Nuisances § 141.
[9] 58 Am Jur 2d, New Trial § 115 *et seq.*
[10] 58 Am Jur, Witnesses § 769.
[11] 58 Am Jur, Witnesses § 460 *et seq.*

3. RAILROADS—NEGLIGENCE—PUBLIC SERVICE COMMISSIONS—INSTRUC-
TIONS.

Instruction to the jury that it may not find defendant railroads
negligent for installing and maintaining flasher signals in
the center of a road since they were required to do so by
the Public Service Commission was neither an accurate state-
ment of the law nor sufficiently informative because com-
pliance with the commission's order for the installation and
maintenance of certain warning devices should be considered
by the jury in determining whether a railroad was negligent,
but it cannot be said as a matter of law that compliance
with such an order is to be equated as freedom from negli-
gence.

4. RAILROADS—HIGHWAYS—PUBLIC SERVICE COMMISSIONS—NUISANCE
—INSTRUCTIONS.

Instructions to the jury that the legislature has complete control
over the highways and that since defendant railroads complied
with the orders of the Public Service Commission relative to
flashers that were installed at a railroad crossing they could
not be charged with maintaining a nuisance at the crossing
were at least misleading and quite inadequate, because the
question of nuisance is one for the jury under all the cir-
cumstances of an accident at the crossing.

5. NUISANCE—WORDS AND PHRASES.

The word "nuisance" has been variously defined and is so
comprehensive that its existence must be determined from the
facts and circumstances of each case.

6. NUISANCE—PUBLIC SERVICE COMMISSIONS—RAILROADS.

A nuisance may be "public" or "private", "civil" or "criminal",
and compliance with the orders of a regulatory commission
such as the Public Service Commission are usually held to
preclude a charge of "public" or "criminal" nuisance; how-
ever, it cannot be said that under all circumstances com-
pliance with an order of the commission absolves a railroad
from liability for maintaining a nuisance in fact.

7. NUISANCE—STATES.

No state agency is free to maintain a nuisance; hence, it cannot
permit or require another person to do so.

8. NUISANCE—RAILROADS—JURY QUESTION.

Whether the maintenance of a warning device authorized by
the Public Service Commission at a railroad crossing, under

all the circumstances of an accident at the crossing, was a nuisance or not should have been left to the jury.

9. NEW TRIAL—INSTRUCTIONS.

An action must be remanded for a new trial where the jury was not adequately or properly instructed.

10. WITNESSES—DECEASED WITNESSES—DEPOSITIONS—IMPEACHMENT —INCONSISTENT STATEMENTS.

Allowing defendants to produce testimony of two witnesses who asserted that a deceased witness had made statements inconsistent with the testimony in her deposition was improper because it is necessary to lay a foundation for proof of prior inconsistent statements and where the witness has died it is impossible to lay the foundation properly; hence prior inconsistent statements cannot be shown.

11. ATTORNEY AND CLIENT—CROSS-EXAMINATION—INTERROGATORIES.

Trial court properly refused to grant a motion to cross-examine attorneys who prepared answers to interrogatories.

### DISSENTING OPINION
### BLACK and T. E. BRENNAN, JJ.

12. RAILROADS—COUNTIES—NUISANCE—WARNING SIGNAL—STATUTES —PUBLIC SERVICE COMMISSION.

*Courts will not hold conduct to constitute a nuisance where authority therefor exists by virtue of legislative enactment; therefore, plaintiff failed to make out a cause submissible under his pleaded theory of recovery that a pedestal supporting a grade-crossing warning signal constituted an actionable nuisance where defendants, a board of county road commissioners and two railroad companies, constructed and maintained the signal in specific accord with a valid order of the Public Service Commission, which order was unchallenged, both as to jurisdiction and the manner in which defendants proceeded to execute the order.*

Appeal from Court of Appeals, Division 3, J. H. Gillis, P. J., and McGregor and Quinn, JJ., affirming Saginaw, Hazen R. Armstrong, J. Submitted October 8, 1971. (No. 16 October Term 1971 Docket No. 52,715.) Decided February 25, 1972.

21 Mich App 103 reversed.

Complaint by Henry J. Ebel against the Board of Saginaw County Road Commissioners, New York Central Railroad Company, and Grand Trunk Western Railroad Company for damages resulting from an automobile collision with a road pedestal of a railroad crossing signal. Judgment for defendants. Plaintiff appealed to the Court of Appeals. Affirmed. Plaintiff appeals. Reversed and remanded for new trial.

*Heilman, Purcell, Tunison & Cline,* for plaintiff on appeal.

*Davidson, Chaklos, Jungerheld & Hoffmann,* for defendant Board of County Road Commissioners of Saginaw.

*Patrick E. Hackett,* for defendant Penn Central Railroad Company (formerly New York Central Railroad Company).

*Earl C. Opperthauser,* for defendant Grand Trunk Western Railroad Company.

T. G. KAVANAGH, J.   This case involves the duty of a railroad to provide adequate warnings at crossings of public highways and railroad tracks.

As stated by the Court of Appeals,[*] the facts are:

"About 1:30 a.m. on August 18, 1963, plaintiff was a passenger in an automobile driven by his wife. He was injured when that automobile collided with a center-of-the-road pedestal which supported a railroad crossing flasher signal placed and maintained by the defendant railroads pursuant to an order of Michigan Public Utilities Commission dated April 11, 1928.

---

[*] 21 Mich App 103 (1970).

"Plaintiff commenced this action to recover for his injuries on February 17, 1964. It was plaintiff's contention that defendants were jointly negligent in maintaining the center-of-the-road pedestals contrary to CLS 1961, § 469.5 (Stat Ann 1963 Cum Supp § 22.765) and CL 1948, § 469.8 (Stat Ann § 22.768), and that they were liable for maintaining a nuisance thereby. Pursuant to jury verdict a judgment of no cause of action entered. Plaintiff's motion for new trial was denied, and he appeals from the judgment and denial of the motion for new trial."

The Court of Appeals affirmed.

The plaintiff states six issues on appeal, three essentially dealing with the court's rulings on admissibility of evidence, and three essentially dealing with the court's instructions to the jury.

We will first consider the trial court's instruction to the jury.

Counsel for the plaintiff submitted requests to charge which, although not included in the appendix, apparently asked for specific instruction with respect to the defendant railroads' common-law duties. The references thereto are contained in the transcript of the rulings, arguments and objections to the charge:

*"The Court:* Plaintiff's Request Number 8 will not be given.

*"Mr. Egloff:* Plaintiff objects to the failure of the Court to give Plaintiff's Request Number 8 because said charge, in the opinion of the plaintiff, states the law of the case that is being tried before this Court, that it sets forth the fact that the railroads have a common law duty, over and above statute, to remove hazards on their crossings with public roads. We feel that failure to give that, your Honor, is prejudicial to the plaintiff.

*"Mr. Hackett [attorney for N.Y.C. Railroad]:* Your Honor, would it prolong this too much, do you

feel, or would it be improper if we were to state briefly why we feel it should or should not be given?

"*The Court:* I don't think it would really be helpful to me at this time.

"*Mr. Hackett:* Thank you, your Honor.

"*The Court:* Plaintiff's Request Number 9 will not be given.

"*Mr. Egloff:* Plaintiff objects to the failure of the Court to give its Request Number 9 to the jury. This is because of the fact that the charge shown by Request Number 9 states a common law duty of the railroads, it being above the statutes, and I believe it is prejudicial to this plaintiff for this charge not to be given.

\*     \*     \*

"*The Court:* Plaintiff's Request Number 9b will not be given.

"*Mr. Egloff:* Plaintiff objects to the failure of the Court to give Plaintiff's Instruction Number 9b in that it states the common law of Michigan in regard to the railroad crossing at Shattuck Road and the duties of the defendants in regard to the location of said stanchions or barriers in the center of the road. Plaintiff believes that failure of the Court to give this instruction is prejudicial error to this plaintiff.

"*The Court:* Plaintiff's Request Number 9c will not be given.

"*Mr. Egloff:* Plaintiff objects to the failure of the Court to give Plaintiff's Request Number 9c of plaintiff's requests to charge for the reason that it states the plaintiff's theory of the case, that there is a public nuisance in the railroads and in the board of road commissioners. It states the common law of Michigan, your Honor, as well as the statutory law of the State of Michigan, that failure to give this request is prejudicial to the plaintiff.

\*     \*     \*

"*Mr. Egloff:* The plaintiff objects to the failure of the Court to give Plaintiff's Requested Charge Num-

ber 16 for the reason that it sets forth the common
law duties of the railroads at their crossings, as set
forth in the case of Emery v. Chesapeake & Ohio
Railroad Company, 372 Michigan, 663, that it also
sets out the duties as far as the board of county road
commissioners are concerned with regard to cross-
ings. The failure of the Court to give that charge
would unduly prejudice the plaintiff.

"*The Court:* I believe we have now completed Mr.
Egloff's requests."

Additionally elsewhere plaintiff's attorney repeat-
edly unsuccessfully objected to the defendants' re-
quests for charge on the grounds that they neglected
defendants' common-law duties, and after the jury
was charged the following colloquy took place:

"*Mr. Egloff:* May it please the Court, at this time
the plaintiff will renew his objections to the Charge
of the Court.

"We will also make the additional objection that
the Charge as given by the Court, I was unable to
follow it too much by our charges here, I had to
move around, I think the Court had them in disorder
as to what they were originally, but I object to the
Charge of the Court in that it does not state the
common law duties of these railroads and the road
commission, your Honor, as set forth in Emery v.
Chesapeake & Ohio Railroad Company, 372 Mich-
igan, 663.

\*      \*      \*

"*The Court:* The Court will stand by its Charge."

From our reading of the charge as given, the only
part of it which could be construed as treating of
the railroads' common-law duties reads:

"I further charge you, Members of the Jury, that
if you believe from the evidence that this crossing,
because of the existence of the center of the road
crossing signal, pedestal, stanchion or barrier at the

time of the accident, was unusually dangerous to travelers on said highway, namely, Shattuck Road, and that fact was known to the defendants or by the exercise of ordinary care should have been known by them, then it was the duty of the defendants, their clerks, servants and agents to use such other means to prevent injury to travelers at said crossing as permitted by law."

We do not regard this as adequate or accurate. In *Emery* v *Chesapeake & O R Co,* 372 Mich 663 (1964), and in *Baldinger* v *Ann Arbor R Co,* 372 Mich 685 (1964), this Court treated extensively of the "unusual conditions" or "special circumstances" and "local warnings" rule, and reaffirmed the long-standing rule that the railroad's duty of due care may require it to provide warnings over and above those required by statutory law or safety regulations. The test is not whether the conditions were *unusually* dangerous, but whether what was done under the circumstances met the test of an ordinarily prudent man under the same or similar circumstances.

The court's further instructions:

"The statutes of this State place control of safety devices at railroad and highway crossings within the authority of the Public Service Commission. When that commission has ordered certain protection devices, it is not the duty of either the railroad or this Court to decide that some other signals should have been installed or that they should have been located at a different place. Consequently, I charge you that since the railroad complied with the orders of the commission concerning these safety devices, that there can be no negligence relative to such devices chargeable to the railroads in this case.

"I charge you that the center of the street flashing lights were installed and thereafter maintained at the Shattuck Road crossing by the defendants here

in compliance with the order of the Michigan Public Utilities Commission and the order of the commission was still in force on the date of the plaintiff's accident. The defendants were required by law to obey the commission's order and to maintain the flashing light signals as they were until the commission changed its order. In addition, a statute of the State of Michigan prohibited the defendants from removing these railroads signals without authority to do so. * * * Therefore, I charge you that you may not find the defendants negligent for installing and maintaining the flasher signals in the center of Shattuck Road since they were required by law to do so,"

are neither an accurate statement of the law or sufficiently informative. Compliance with the commission's orders for the installation and maintenance of certain warning devices are among the circumstances and certainly evidence the *jury* should consider in determining whether the railroad was negligent, but it cannot be said as a matter of law that compliance with such commission's order is to be equated as freedom from negligence.

The court also instructed the jury:

"The Legislature in this State has complete control over the highways of this State. Inasmuch as the railroads complied with the orders of the Michigan Public Service Commission relative to the flashers that were installed at the Shattuck Road crossing, they cannot be charged with maintaining a nuisance."

This instruction is at least misleading and quite inadequate.

The word "nuisance" has been variously defined and is so comprehensive that its existence must be determined from the facts and circumstances of each case.

"It has been said that, accurately used, the term 'nuisance' is applicable only to conditions or activities which threaten injury to persons outside the defendant's premises, either upon a public highway or upon the premises of others in the neighborhood." In 58 Am Jur 2d, Nuisances, § 1, p 556.

Since a nuisance may be "public" or "private", "civil" or "criminal", compliance with the orders of a regulatory commission such as the Public Service Commission, are usually held to preclude a charge of "public" or "criminal" nuisance. It cannot be said however that under all circumstances compliance with an order of the commission absolves a railroad from liability for maintaining a nuisance in fact. See 58 Am Jur 2d, Nuisances, §§ 229, 230, pp 833–835.

No state agency is free to maintain a nuisance, and hence it cannot permit or require another person to do so.

Whether the maintenance of the warning device authorized at this crossing under all the circumstances of this accident was a nuisance or not should have been left to the jury.

We are satisfied from our examination of the whole charge that the jury was not adequately or properly instructed and accordingly must remand for a new trial.

Because on the retrial of this matter the same question may arise on evidentiary rulings we also address ourselves to the errors asserted.

The plaintiff's wife, who was driving the car at the time of the accident, was deposed pursuant to notice and her deposition was read into evidence at the trial. After making the deposition and before the trial she died.

At trial, for the purpose of attacking the credibility of the deposing witness, defendants were allowed

to produce the testimony of two witnesses who asserted the deceased wife had made statements inconsistent with her testimony in the deposition.

We hold this improper. Michigan has long held that it is necessary to lay a foundation for proof of prior inconsistent statements. *Sawyer* v *Sawyer,* Walk Ch 48 (Mich, 1842), *Connell* v *McNett,* 109 Mich 329 (1896); see also *Rogers* v *Blandon,* 294 Mich 699 (1940). Where, as here, the witness has died, and his testimony in the trial is by way of reading his deposition, it is impossible to lay a foundation properly and hence prior inconsistent statements cannot be shown. *Cf.* 58 Am Jur, Witnesses, § 769, p 421.

We find no error in the trial court's rulings regarding the admissibility of the file of the Public Service Commission on the Shattuck Road crossing.

Neither do we find error in the court's refusal to grant plaintiff's motion to cross-examine the attorneys who prepared the answers to the interrogatories.

Reversed and remanded for new trial.

Costs to plaintiff.


T. M. KAVANAGH, C. J., and ADAMS, SWAINSON, and WILLIAMS, JJ., concurred with T. G. KAVANAGH, J.


BLACK, J. (*dissenting*). With Division 3 (21 Mich App 103) I agree that plaintiff failed to make out a cause submissible under his pleaded theory of recovery, and that the verdict of the jury and the judgment of the circuit court should for that reason be sustained.

The pedestal supporting this grade-crossing warning signal, said by plaintiff as having constituted an actionable nuisance, was constructed and maintained by the defendants in specific accord with a valid

order of the Public Service Commission, and it is difficult to perceive how or by what lawful means defendants might have proceeded otherwise, the jurisdiction of the commission considered.

The April 11, 1928 order of the commission being unchallenged, both as to jurisdiction and the manner in which the defendants proceeded to execute that order, the general rule applies. It is that the courts will not hold conduct to constitute a nuisance where authority therefor exists by virtue of legislative enactment. The authorities are gathered in 58 Am Jur 2d, Nuisances, § 228 *et seq.* under heading "C. Legislative or Municipal Authority," pp 831–841. The first paragraph of topic "C" above, beginning § 228, states the rule I would apply:

"Generally, the courts will not hold conduct to constitute a nuisance where authority therefor exists by virtue of legislative enactment, and there are numerous statements in the cases to the effect that although it otherwise would be one, the doing of that which the law authorizes cannot be a nuisance, or such a nuisance as will give a common-law right of action. It has also been held that when the legislature directs or allows that to be done which would otherwise be a nuisance, it will be valid on the ground that the legislature is ordinarily the proper judge of what the public good requires, unless carried to such an extent that it can fairly be said to be an unwholesome and unreasonable law. The authorities are agreed that the legislature may legalize, insofar as the public is concerned, what would otherwise be a public nuisance, and according to some of the courts, it may legalize what would otherwise be private nuisances, so as to prevent the recovery of damages or relief by way of injunction on account of them, but the weight of authority is to the contrary. It has been held that the legislature may

legalize an act which has been enjoined by a court, or which the court has under consideration in a suit for its abatement."

My vote is cast to affirm.

T. E. Brennan, J., concurred with Black, J.