JOHNSON v GRAND TRUNK WESTERN RAILROAD COMPANY

1. TRIAL—MOTIONS—DIRECTED VERDICT—REASONABLE MAN—JURY QUESTION.

The test for reviewing a directed verdict against a plaintiff is whether, when viewing the facts in the light most favorable to plaintiff, reasonable men could honestly reach different conclusions; if they could, the question is for the jury.

2. WITNESSES—EXPERT WITNESS—QUALIFICATIONS—RATE OF SPEED.

One need not qualify as an expert in order to testify as to matters one learns through ordinary observation, such as rate of speed.

3. NEGLIGENCE—EVIDENCE—ORDINANCES—VIOLATION OF ORDINANCE.

Violation of a local ordinance is evidence of negligence.

4. NEGLIGENCE—ACTIONABLE NEGLIGENCE—PROXIMATE CAUSE—CAUSE IN FACT—FACTORS.

Negligence is not actionable unless it is a proximate cause of the injuries for which damages are sought; the negligence must be a cause in fact of the harm; the negligence must be a substantial factor in bringing about the harm; it must appear more likely than not that the harm would have been averted but for the negligence.

5. RAILROADS—ACCIDENT AT CROSSING—NEGLIGENCE—SPEEDING— PROXIMATE CAUSE.

The speed of a train which may have been exceeding a 30-mile-per-hour speed limit was not a proximate cause of an automo-

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 336.
[2] 31 AM Jur 2d, Expert and Opinion Evidence § 157.
[3] 57 Am Jur 2d, Negligence §§ 308–313.
[4] 57 Am Jur 2d, Negligence §§ 127, 128.
[5] 65 Am Jur 2d, Railroads §§ 442–444.
[6] 65 Am Jur 2d, Railroads §§ 480 *et seq.,* 508–513.
[7] 65 Am Jur 2d, Railroads §§ 501–505, 513.
[8, 9] 65 Am Jur 2d, Railroads § 515.
[10] 53 Am Jur 2d, Master and Servant § 384.
[11] 65 Am Jur 2d, Railroads § 626.

bile-train accident where the train was only 50 feet from the car when the car stopped on the railroad tracks, the engineer immediately applied the brakes and made a perfect stop, and the accident could not have been avoided even if the train had been going at a lesser speed.

6. Railroads—Negligence—Duty of Care—Railroad Crossings— Statutes—Safety Regulations—Michigan Public Service Commission.

    A railroad's duty of due care may require it to provide warnings over and above those required by statutory law or safety regulations; compliance by a railroad with orders of the Michigan Public Service Commission regarding protective crossing devices does not preclude a finding of negligence for failure to maintain a safe crossing.

7. Railroads—Railroad Crossings—Warning Signals—Michigan Public Service Commission—Statutes.

    Railroads are prohibited from installing any sign or signal at railroad crossings without authorization from the Michigan Public Service Commission (MCLA 257.615).

8. Railroads—Negligence—Duty of Care—Railroad Crossings— Dangerous Condition—Public Service Commission—Failure to Petition—Directed Verdict.

    A railroad which was in compliance with all public service commission orders may still have breached its common-law duty of care by failing to petition the commission for inspection of a dangerous crossing condition or by failing to take other preventive action such as use of flagmen at the crossing at peak traffic hours; therefore, directing a verdict for the railroad in a suit for negligence arising out of an automobile-train accident at the crossing was error.

9. Evidence—Railroads—Negligence—Public Service Commission Report—Hearsay—Knowledge of Dangerous Condition.

    A public service commission inspection report on a railroad crossing, offered against a railroad in a suit for negligence, is inadmissible hearsay where the report is offered to prove the truth of the matters asserted; however, the report is admissible to show the railroad's notice and knowledge of the crossing's dangerous condition.

10. Evidence—Railroads—Negligence—Interdepartmental Memo-randums—Knowledge—Admissions—Scope of Employment.

    Interdepartmental memorandums between railroad employees are admissible to show the railroad's knowledge of their con-

tents; and they may be introduced as admissions, if they were made by the employees within the scope of their employment.

11. EVIDENCE—RAILROADS—NEGLIGENCE—EVIDENCE OF PRIOR ACCI-
DENTS—NEAR MISSES—EXCLUSION OF TESTIMONY—DISCRETION.
Exclusion of testimony about near misses at a railroad crossing, while permitting testimony of prior accidents, was not an abuse of discretion in a negligence suit against a railroad.

Appeal from Wayne, Harold E. Hunsberger, J. Submitted Division 1 December 3, 1974, at Detroit. (Docket No. 14585.) Decided February 24, 1975.

Complaint by Verna M. Johnson, individually, as administratrix of the estate of Thelma M. Johnson, deceased, and as special guardian of the estate of Frank Johnson, mentally incompetent, against Grand Trunk Western Railroad Company and Detroit & Toledo Shore Line Railroad Company for damages for injuries sustained in an automobile-train accident. Directed verdict for both defendants. Plaintiff appeals. Affirmed as to Detroit & Toledo Shore Line Railroad Company. Reversed and remanded for a new trial as to Grand Trunk Western Railroad Company.

*Milan & Miller* and *Zeff & Zeff (Edward Grebs,* of counsel), for plaintiff.

*James A. Brescoll,* for defendants.

Before: J. H. GILLIS, P. J., and V. J. BRENNAN and PETERSON,* JJ.

J. H. GILLIS, P. J. This personal injury action arises from a February 16, 1970 accident at a Detroit railroad crossing between an automobile and a train. After plaintiffs, Frank Johnson and Verna M. Johnson, had presented their case, de-

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

fendants Grand Trunk Western Railroad Company (hereinafter referred to as Grand Trunk) and Detroit & Toledo Shore Line Railroad Company (hereinafter referred to as Shore Line) both moved for a directed verdict. On May 25, 1972 the trial judge granted each defendant's motion. Plaintiffs appeal.

Frank Johnson and his 16-year-old daughter, Thelma Marie Johnson, were passengers in a car driven by one Thomas Fleming in an easterly direction on East Eight Mile Road. While crossing defendant Grand Trunk's tracks at Eight Mile and Hoover Roads, the car stopped and was struck by a southbound train owned and operated by defendant Shore Line. Frank Johnson suffered permanent injuries, including brain damage. He is now a mentally retarded invalid confined to a nursing home for the rest of his life. Thelma Marie Johnson received fatal injuries, dying four days after the accident.

The engineer, Lester Cannon, testified that as the train approached the crossing, cars traveling in both directions continued to cross the tracks even though the warning lights and bells were operating. When the train was approximately 200 yards north of Eight Mile, the engineer saw plaintiffs' automobile approach the crossing at "a good rate of speed", then brake and come to a stop about 50 feet west of the tracks. As the train arrived at the edge of westbound Eight Mile, plaintiffs' vehicle suddenly accelerated rapidly, then braked and came to a stop on the tracks. By this time, the train was already crossing the median strip between the westbound and eastbound lanes and was only a second or two from impact.

At the time of this accident the Grand Trunk tracks were protected by advance-warning signs,

cross-buck signs and four sets of back-to-back flashing red lights installed pursuant to 1933 and 1946 orders of the Michigan Public Service Commission (hereinafter referred to as MPSC).

On June 22, 1964, the MPSC, by its railway safety inspector, Harry Taylor, conducted a formal inspection of the crossing at the request of the State Highway Department. The inspection was requested because the highway authorities proposed widening Eight Mile from three lanes in each direction to five lanes in each direction. The work was scheduled to be completed in 1965.

Mr. Taylor determined that because of a high volume of combined train and automobile traffic, a revised pattern of crossing protection was needed. He recommended a pattern of two flashing light signals, 12-foot cantilevered arms, and roadway half-gates. No objections were made to these recommendations, and, on September 2, 1965, a MPSC order was entered, which provided that the additional safeguards would be installed concurrently with the widening of Eight Mile.

When it became apparent that the proposed road widening was going to be continually delayed, Mr. Taylor made an informal inspection in November of 1968. In a memorandum to the MPSC he expressed his opinion that the protective devices were inadequate and suggested that another formal inspection be held. A formal inspection was held on January 17, 1969, and, as a result thereof, Mr. Taylor recommended in a January 29, 1969 report that the MPSC issue an order requiring installation of full roadway gates without waiting for the road widening. Grand Trunk made no objections to this recommendation, but MPSC did not issue an order permitting installation of these gates until March 2, 1970, two weeks after the accident.

I

*Did the trial court err in directing a verdict for defendant Shore Line?*

In reviewing a directed verdict against plaintiffs, we must view the facts in the light most favorable to plaintiffs. If these facts are such that reasonable men could honestly reach different conclusions, then the question is for the jury. *Humenik v Sternberg,* 371 Mich 667; 124 NW2d 778 (1963); *Kroll v Katz,* 374 Mich 364; 132 NW2d 27 (1965).

It is undisputed that the train was traveling with its headlight on bright and its rotating yellow flasher in operation on top of the engine, and that as the train approached the crossing the engineer turned on the engine bell and commenced sounding the regulation engine whistle of two longs, a short, and a long.

The trial judge also found that the testimony conclusively established that the train was going 30 miles per hour, in compliance with the local ordinance. However, in making this determination the judge apparently ignored the testimony of Ronald Magga, an independent eyewitness, who was working at a nearby gas station at the time of the accident. Magga testified that, in his opinion, the train was going between 30 and 40 miles per hour.

This is competent testimony. "One need not qualify as an expert in order to testify as to matters one learns through ordinary observation, such as the rate of speed * * * ." *Hicks v Bacon,* 26 Mich App 487, 493; 182 NW2d 620, 623 (1970). A Detroit ordinance provides for a maximum speed of 30 miles per hour for trains. Violation of local ordinances is evidence of negligence. *Whinnen v 231 Corp,* 49 Mich App 371; 212 NW2d 297

(1973). Therefore, there was sufficient evidence for it to find negligent operation of the train by defendant Shore Line.

However, even though there was evidence to support a jury determination of negligence, this does not mean that Shore Line is liable for plaintiffs' injuries. Negligence is not actionable unless it is a proximate cause of the injuries for which damages are sought. *Perkins v Texas & N O R Co,* 243 La 829; 147 So 2d 646 (1962), involved a railroad-crossing accident. When the train was about 40–60 feet from the crossing an automobile came into view. The engineer immediately applied the emergency brakes, but the train struck the right side of the vehicle and carried it about 1250 feet. Both occupants of the car were killed. Testimony established that the train was traveling 12 miles per hour over the 25-miles-per-hour speed limit. The court held that the railroad's negligence was not a proximate cause of the accident:

"It is fundamental that negligence is not actionable unless it is a cause in fact of the harm for which recovery is sought. It need not, of course, be the sole cause. Negligence is a cause in fact of the harm to another if it was a substantial factor in bringing about that harm. Under the circumstances of the instant case, the excessive speed was undoubtedly a substantial factor in bringing about the collision if the collision would not have occurred without it. On the other hand, if the collision would have occurred irrespective of such negligence, then it was not a substantial factor.

"The burden of proving this causal link is upon the plaintiff. Recognizing that the fact of causation is not susceptible of proof to a mathematical certainty, the law requires only that the evidence show that it is more probable than not that the harm was caused by the tortious conduct of the defendant. Stated differently, it must appear that it is more likely than not that the

harm would have been averted but for the negligence of the defendant.

"In the instant case the train engineer testified that at a speed of 25 miles per hour he would have been unable to stop the train in time to avoid the accident. Other facts of record support his testimony in this regard. With efficient brakes, the mile-long train required 1250 feet to stop at a speed of 37 miles per hour. It is clear, then, that even at the concededly safe speed of 25 miles per hour, the momentum of the train would have, under the circumstances, carried it well beyond the crossing.

\* \* \*

"Based upon the evidence of record, it appears almost certain that the fatal accident would have occurred irrespective of the excessive speed of the train. It follows that this speed was not a substantial factor in bringing about the accident." *Perkins, supra,* 243 La 829, 835–839; 147 So 2d 646, 648–649.

See, *Perch v New York C R Co,* 294 Mich 227; 293 NW 778 (1940); *Conrad v Baltimore & O R Co,* 146 F Supp 151 (WD Pa, 1956); *McAllister v Tucker,* 88 So 2d 526 (Fla, 1956).

The facts in the instant case are analogous to those in *Perkins.* When plaintiffs' automobile stopped on the tracks, the Shore Line train was already crossing the median strip separating the westbound and eastbound lanes, and was only about 50 feet from the car. Engineer Cannon immediately applied the emergency brakes, but was unable to avoid the accident. The train brakes functioned properly and the train made a mechanically perfect stop approximately 600 feet past the crossing. The engineer testified that he would not have been able to avoid hitting the car even if he had been going ten miles per hour. Plaintiffs' expert witness, J. Carl McMonagle, also testified that a train could not stop within a distance of 50

feet whether it was going 30 or 10 miles per hour. The speed of the Shore Line train was not a proximate cause of this accident. Therefore, we hold that the trial judge did not err in directing a verdict for defendant Shore Line.

## II

*Did the trial court err in directing a verdict for defendant Grand Trunk?*

Grand Trunk was not involved with the actual operation of the train. Therefore, their only possible liability would be in negligently maintaining the railroad crossing. Defendant Grand Trunk contends that because it was in compliance with all MPSC orders requiring protective crossing devices and cooperated fully with MPSC investigations, it did all it could reasonably be expected to do to fulfill its duty to maintain a safe crossing.

It is undisputed that Grand Trunk was in compliance with the 1933 and 1946 MPSC orders. However, compliance with MPSC orders does not preclude a finding of negligence. *Emery v Chesapeake & O R Co,* 372 Mich 663; 127 NW2d 826 (1964); *Ebel v Saginaw Road Commissioners,* 386 Mich 598; 194 NW2d 365 (1972). In *Ebel,* plaintiff's car collided with a flasher warning device installed pursuant to a 1928 MPSC order. In remanding for a new trial because of the trial court's refusal to instruct the jury on the railroad's common-law duty to maintain safe crossings, the Court said:

"In *Emery v Chesapeake & O R Co,* 372 Mich 663; 127 NW2d 826 (1964), and in *Baldinger v Ann Arbor R Co,* 372 Mich 685; 127 NW2d 837 (1964), this Court treated extensively of the 'unusual conditions' or 'special circumstances' and 'local warnings' rule, and reaffirmed the long-standing rule that the railroad's duty of

due care may require it to provide warnings over and above those required by statutory law or safety regulations. The test is not whether the conditions were *unusually* dangerous, but whether what was done under the circumstances met the test of an ordinarily prudent man under the same or similar circumstances.

\* \* \*

"Compliance with the commission's orders for the installation and maintenance of certain warning devices are among the circumstances and certainly evidence the *jury* should consider in determining whether the railroad was negligent, but it cannot be said as a matter of law that compliance with such commission's order is to be equated as freedom from negligence." *Ebel, supra,* 386 Mich 598, 605–606; 194 NW2d 365, 368.

We recognize that MCLA 257.615; MSA 9.2315, has been interpreted as prohibiting railroads from installing any sign or signal at railroad crossings without authorization from the MPSC. *People v Grand Trunk W R Co,* 3 Mich App 242; 142 NW2d 54 (1966); *Masters v Grand Trunk W R Co,* 13 Mich App 80; 163 NW2d 661 (1968). However, these cases only stand for the proposition that the railroad's common-law duty of care must be interpreted in light of the statute. They do not stand for the proposition that MCLA 257.615; MSA 9.2315, has extinguished the railroad's common-law duty. *People v Grand Trunk W R Co, supra,* 3 Mich App 242, 248; 142 NW2d 54, 56–57, said:

"This common-law duty does not give railroads the privilege of violating the statutory law of our State, but does require them to take such action as the law permits; *i.e.,* where a dangerous grade crossing exists and the signs or warnings present are deemed insufficient by a railroad, it may request the proper highway authorities or the public service commission as provided by law for the authority to remedy the situation."

In the instant case two expert witnesses, Mr. Taylor and Mr. McMonagle, testified that, in their opinion, the crossing protection, as of 1968, was inadequate. Engineer Cannon testified that he knew that cars frequently crossed the tracks while the signals were in operation. Moreover, Mr. Stonehouse, a signal engineer for Grand Trunk, testified that he knew traffic on Eight Mile Road was heavy, and that frequent attempts were made by motorists to "beat the train".

We think this is sufficient evidence for a jury to determine that Grand Trunk, by merely being in compliance with MPSC orders and cooperating with MPSC investigations, did not take sufficient action to satisfy its common-law duty of care. Plaintiffs contend, and we agree, that a jury could find that defendant Grand Trunk should have known of the dangerous conditions at this crossing, and, therefore, should have petitioned the MPSC for an inspection prior to 1964, the year of the inspection requested by the highway department. Or, a jury could find that sometime between 1964 and the 1969 inspection requested by Mr. Taylor, Grand Trunk should have, due to the delay in the widening of Eight Mile, petitioned for an inspection. Furthermore, even if a jury were to conclude that Grand Trunk had no duty to petition the MPSC, it could conclude that defendant should have taken other preventive action such as use of flagmen at peak traffic hours.

Having determined that a jury could have found that Grand Trunk breached its common-law duty of care to plaintiffs, we hold that the trial judge erred in directing a verdict for this defendant.

### III

Since on retrial of this matter certain eviden-

tiary questions may arise again, we will address ourselves briefly to those problems.

First, plaintiff sought to admit a 1946 MPSC inspection report. The trial court refused to allow this report into evidence on the grounds that it was hearsay, and that it wasn't admissible under the business-records or public-records exception to the hearsay rule. If this report is offered to prove the truth of the matters asserted therein, then we agree with the trial court's ruling. *Matthews v Aluminum Acceptance Corp,* 1 Mich App 570; 137 NW2d 280 (1965). However, if plaintiffs seek to introduce this report only to show Grand Trunk's notice and knowledge of the crossing's dangerous condition, there is no hearsay problem and it should be admitted. *Shimel v Interstate Motor Freight System,* 5 Mich App 143; 146 NW2d 130 (1966).

Secondly, the trial court refused, also on hearsay grounds, to allow into evidence certain interdepartmental memorandums between Grand Trunk employees. As with the MPSC report, these documents are admissible to show the knowledge of Grand Trunk. Moreover, if these employee statements were made within the scope of their employment, they may be introduced into evidence as admissions of Grand Trunk. See *Kalamazoo Yellow Cab Co v Kalamazoo Circuit Judge,* 363 Mich 384; 109 NW2d 821 (1961); *Bauman v Grand Trunk W R Co,* 18 Mich App 450; 171 NW2d 468 (1969).

Lastly, plaintiffs attempted to question Ronald Magga about 15 "near misses" at the crossing. The court ruled that the witness could testify as to prior accidents, but not as to near misses or close calls. The trial judge did not abuse his discretion in excluding this testimony. *Freed v Simon,* 370 Mich 473; 122 NW2d 813 (1963).

We affirm as to defendant Shore Line, and reverse and remand for a new trial as to defendant Grand Trunk. As to the action between plaintiffs and Shore Line, costs to Shore Line. As to the action between plaintiffs and Grand Trunk, costs to plaintiffs.